**Catherine E. MacDONALD, Plaintiff, Appellant,**

v.

**AIR CANADA, Defendant, Appellee.**

No. 7762.

United States Court of Appeals, First Circuit.

March 25, 1971.

Eugene A. Weibel, Arlington, Mass., for plaintiff, appellant.

Jerome P. Facher, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for defendant, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

**1404**

ALDRICH, Chief Judge.

This is an action in two counts brought by plaintiff, an arriving international passenger on defendant airline, for injuries sustained by a fall while awaiting her suitcase in the baggage area. Essentially, she claims negligence, or, in the alternative, liability without fault under the provisions of the Warsaw Convention, 49 Stat. 3000 (1934), as modified in accordance with the so-called Montreal Agreement, 31 Fed.Reg. 7302 (1966). The court directed a verdict for the defendant, and plaintiff appeals.

The facts, insofar as they were developed at trial, are undisputed. Plaintiff, a 74-year-old woman in apparent good health, arrived at the Boston International Airport from Canada in the early evening, accompanied by her daughter. Together they walked to the baggage delivery and customs clearance area of the airport, where the defendant had leased rights in company with other carriers who used it simultaneously. Plaintiff made no request for any assistance, and gave no appearance of needing any. She stood by a pillar, a short distance from the baggage delivery carousel, where her daughter had stationed her. In about ten minutes one bag was discharged onto the carousel. The daughter took it, placed it beside plaintiff, and went back for the other. While the daughter's back was turned, plaintiff fell.

Plaintiff, concededly now mentally incompetent, did not take the stand. No evidence was offered as to why she fell. There were a number of persons passing by, and some put bags in plaintiff's vicinity. The daughter testified that the crowd was "pushing and shoving" at the carousel. However she said that she had placed her mother a safe distance away. She also testified that there was considerable "confusion," in part because a number of wheelchairs were being pushed about. On the other hand, it was a large room and the daughter testified to neither confusion nor the presence of wheelchairs in the area near her mother.

When the daughter heard a "crash" she turned. Plaintiff was lying outstretched on her face. She had injured her face, broken her glasses, broken both wrists, and hurt her knee. She exclaimed to her daughter, "Oh, my wrists; oh, my knee," and was then unable to speak. The attendant who came to her aid said she was in shock.

■ We see no possible evidence of negligence. We do not believe that a safe location became unsafe because persons, including the daughter herself, had placed bags on the floor. At oral argument, when we inquired what negligence plaintiff claimed, counsel said the defendant should have had more attendants present. He was unable, however, to suggest what even one additional attendant could or should have done. We cannot think the defendant should have assumed that a 74-year-old woman in apparent good health, who was accompanied, and who asked for nothing, needed volunteered attention. *Cf.* Federal Ins. Co. v. Bonilla Colon, 1 Cir., 1968, 392 F. 2d 662. There was no evidence of negligence to go to the jury.

Alternatively, plaintiff seeks to recover without proof of negligence under the provisions of the Warsaw Convention. The Convention, which was concededly applicable to plaintiff's flight, provides uniform rules covering certain aspects of air travel. Plaintiff points to Article 17, which provides as follows.

"The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, *if the accident* which caused the damage so sustained took place on board the aircraft or in the course of any of the *operations of* embarking or *disembarking.* * * *" (Emphasis added.)

■ We see no basis for finding an accident, the first requirement for invocation of the Convention. Plaintiff did show that there were bags in her vicinity when she fell. However, even if the jury could have found that the bags

were so close that when she fell she fell over one of them, it would be speculation to say that it was the bag which caused the fall. The area was well lighted. Plaintiff fell forward, and any bag in front of her must have been clearly evident. More important, she was not going anywhere, and there is no reason to think she was proceeding across the floor. The burden was on plaintiff to prove there was an accident. On the facts established it seems as reasonable to suppose that some internal condition was the cause of the fall as that the fall was the result of an accident.

Be this as it may, the Convention requires that the accident occur in the course of disembarking operations. If these words are given their ordinary meaning, it would seem that the operation of disembarking has terminated by the time the passenger has descended from the plane by the use of whatever mechanical means have been supplied and has reached a safe point inside of the terminal, even though he may remain in the status of a passenger of the carrier while inside the building. Examination of the Convention's original purposes reinforces this view. The most important purpose of the Warsaw Conference was the protection of air carriers from the crushing consequences of a catastrophic accident, a protection thought necessary for the economic health of the then emerging industry. Partially in return for the imposition of recovery limits, and partially out of recognition of the difficulty of establishing the cause of an air transportation accident, the Conference also placed the burden on the cashier of disproving negligence when an accident occurred. II Conférence International De Droit Privé Áerien, 4–12 Octobre 1929, at 135–36 (1930); Message from the President of the United States Transmitting a Convention for the Unification of Certain

Rules, Sen. Exec. Doc. No. G, 73rd Cong., 2d Sess. 3–4 (1934). Neither the economic rationale for liability limits, nor the rationale for the shift in the burden of proof, applies to accidents which are far removed from the operation of aircraft.* Without determining where the exact line occurs, it had been crossed in the case at bar.

The defendant was entitled to a directed verdict. The judgment of the district court is affirmed.

---

* Neither does the imposition of liability without fault, as was effected, with respect to United States connected carriage, by the Montreal Agreement. The Agreement, as such, could not change the meaning of Article 17 of the Convention, but we believe its framers assumed the same restricted meaning of that article that we do.