**In re TEL AVIV.**

Civ. A. Nos. 518–72 et al. and Civ. Nos. 174–73, 313–73 and 481–73.

United States District Court, D. Puerto Rico.

Dec. 9, 1975.

Jorge Ortiz Toro, Hato Rey, P. R., for plaintiffs.

William J. Junkerman, New York City, and Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, San Juan, Puerto Rico, for Air France.

Harvey B. Nachman, San Juan, Puerto Rico, for plaintiffs.

MEMORANDUM OF OPINION AND ORDER OF THE COURT ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

GIGNOUX, District Judge.

These three actions seek to recover damages for deaths and personal injuries sustained by arriving international passengers on defendant airline as the result of a terrorist attack in the baggage area of the Terminal Building of Lod International Airport near Tel Aviv, Israel, on May 30, 1972. Plaintiffs claim liability without fault under the provisions of the Warsaw Convention, 49 Stat. 3000 (1934), as modified by the Montreal Agreement, 31 Fed.Reg. 7302 (1966), *both reprinted at* 49 U.S.C.A. § 1502 note (Supp.1975).[1] Defendant has moved for summary judgment on the ground that the Warsaw Convention, as modified by the Montreal Agreement, is inapplicable to these actions, and plaintiffs have filed cross-motions for partial summary judgment on the issue of liability, asserting that the Convention does apply.

---

1. Plaintiffs have waived the additional claims asserted in their original complaints under the 1955 Hague Protocol and the 1971 Guatemala Protocol, neither of which has been rati- fied by the United States. *See* 1 L. Kriendler, Aviation Accident Law §§ 12.01, 12B.01 (rev. ed. 1971).

The material facts are undisputed. Plaintiff in No. 174–73 and plaintiffs' decedents in Nos. 313–73 and 481–73 were members of a large group of Puerto Rico tourists traveling on defendant Air France's Flight No. 132 to Tel Aviv. Flight No. 132 originated in New York, with intermediate stops at Paris and Rome. Three Japanese, in the service of a Palestinian terrorist organization, boarded the plane at Rome. On arrival at Lod Airport, the plane came to a halt about one-third to one-half mile from the Terminal Building. The passengers descended movable stairs to the ground and then walked or rode on a bus to the terminal. There, they presented their passports for inspection by Israeli immigration officials and then passed into the main baggage area of the terminal. While the passengers were awaiting the arrival of the last baggage from the plane, the three Japanese terrorists removed their luggage from the conveyor belt, produced submachine guns and hand grenades, and opened fire upon persons in the baggage area, killing or wounding many, including plaintiff and plaintiffs' decedents. From the time the passengers stepped out onto the movable stairs leading from the plane, all the facilities they used were owned and operated by the State of Israel or El Al, the Israeli National Airline, not by Air France.

■ The Warsaw Convention, which was concededly applicable to plaintiffs' flight, provides uniform rules for inter- national air travel. As modified by the Montreal Agreement, the Convention limits the carrier's liability for death or injury to $75,000 per passenger and imposes liability without fault.[2] The scope of the carrier's liability under the Convention is determined by Article 17, which provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or *in the course of any of the operations of* embarking or *disembarking*. (Emphasis supplied).

■ Defendant concedes that the terrorist attack at Lod Airport was an "accident" within the meaning of Article 17. *See Husserl v. Swiss Air Transport Co.,* 351 F.Supp. 702, 706–07 (S.D.N.Y.1972), *aff'd mem.,* 485 F.2d 1240 (2d Cir. 1973). Defendant's contention is that when the attack occurred, the passengers, all of whom had exited from the aircraft and entered the Terminal Building, were no longer "in the course of any of the operations of . . . disembarking," and hence that the Convention does not apply to plaintiffs' claims. For the reasons to be stated, the Court concludes that the Convention is not applicable to these cases.

The disposition of the motions presently before the Court is clearly controlled

---

2. The Montreal Agreement is not a treaty. Rather, it takes the form of an agreement among international air carriers, of which Air France is one, by which the signatory airlines agreed to include in their tariffs to be filed with the Civil Aeronautics Board a "special contract" by which the carrier would waive its limitation of liability under the Convention up to $75,000 per passenger and would concede its liability without fault with respect to flights originating, stopping or terminating in the United States. In return, the United States withdrew a notice of denunciation of the Convention. The Agreement was negotiated in 1966 between the United States Government and the International Air Transport Association, and was approved by the Civil Aeronautics Board. Agreement CAB 18900, approved, CAB Order No. E–23680, 31 Fed.Reg. 7302 (1966), *reprinted at* 49 U.S.C.A. § 1502 note (Supp. 1975). *See also* 1 L. Kriendler, *supra,* ch. 12A; Lowenfeld & Mendelsohn, *The United States and the Warsaw Convention,* 80 Harv. L.Rev. 497 (1967).

The Montreal Agreement did not modify in any way the meaning of Article 17 of the Convention, the issue presented by the instant motions. *See MacDonald v. Air Canada,* 439 F.2d 1402, 1405n. (1st Cir. 1971); *Evangelinos v. Trans World Airlines, Inc.,* 396 F.Supp. 95, 100 (W.D.Pa.1975); 1 L. Kriendler, *supra,* § 12A–2.

by the recent decision of the Court of Appeals for this circuit in *MacDonald v. Air Canada*, 439 F.2d 1402 (1st Cir. 1971), a case substantially on all fours with the present actions. The plaintiff in *MacDonald*, an arriving international passenger on the defendant airline, suffered a fall while awaiting delivery of her suitcase in the baggage area at Logan International Airport in Boston. She claimed negligence of the airline, or in the alternative, its liability without fault under the provisions of the Warsaw Convention, as modified by the Montreal Agreement. The Court of Appeals unanimously upheld a directed verdict dismissing her complaint, both upon the ground that she had not proved any negligence and also upon the ground that the provisions of the Warsaw Convention were not applicable to her case. As to the latter ground, the court held, first, that the plaintiff had not shown there was an "accident," within the meaning of Article 17. As an alternative basis for its decision that the Warsaw Convention was not applicable, the court held that plaintiff's fall had not occurred in the course of disembarking operations. In this connection, Chief Judge Aldrich, writing for the court, stated, *id.* at 1405:

> [T]he Convention requires that the accident occur in the course of disembarking operations. If these words are given their ordinary meaning, it would seem that the operation of disembarking has terminated by the time the passenger has descended from the plane by the use of whatever mechanical means have been supplied and has reached a safe point inside of the terminal, even though he may remain in the status of a passenger of the carrier while inside the building. Examination of the Convention's original purposes reinforces this view. The most important purpose of the Warsaw Con-

ference was the protection of air carriers from the crushing consequences of a catastrophic accident, a protection thought necessary for the economic health of the then emerging industry. Partially in return for the imposition of recovery limits, and partially out of recognition of the difficulty of establishing the cause of an air transportation accident, the Conference also placed the burden on the cashier [*sic*] of disproving negligence when an accident occurred. II Conference International De Droit Prive Aerien, 4–12 Octobre 1929, at 135–36 (1930); Message from the President of the United States Transmitting a Convention for the Unification of Certain Rules, Sen. Exec.Doc. No. G. 73rd Cong., 2d Sess. 3–4 (1934). Neither the economic rationale for liability limits, nor the rationale for the shift in the burden of proof, applies to accidents which are far removed from the operation of aircraft.* Without determining where the exact line occurs, it had been crossed in the case at bar.

Subsequent to *MacDonald*, at least two other American courts have similarly dismissed Warsaw Convention claims for injuries suffered after the plaintiff passengers had reached the airport terminal building. *Felismina v. Trans World Airlines, Inc.*, 13 Av.Cas. 17,145 (S.D.N.Y. 1974) (injury on escalator inside terminal); *Klein v. KLM Royal Dutch Airlines*, 46 A.D.2d 679, 360 N.Y.S.2d 60 (2d Dep't 1974) (injury on baggage conveyor belt in terminal at Lod International Airport). *See also Mache v. CIE Air France*, [1967] Revue Francaise de Droit Aerien 343 (Cour d'appel, Rouen) (injury in fall in airport customs yard). *Cf. Evangelinos v. Trans World Airlines*, 396 F.Supp. 95, 101–02 (W.D.Pa. 1975) (*pre*-flight terrorist attack in terminal). *But cf. Day v. Trans World*

---

* Neither does the imposition of liability without fault, as was effected, with respect to United States connected carriage, by the Montreal Agreement. The Agreement, as such, could not change the meaning of Article 17 of the Convention, but we believe its framers assumed the same restricted meaning of that article that we do.

*Airlines, Inc.,* 393 F.Supp. 217 (S.D.N.Y. 1975) (same).[3]

Plaintiffs in the instant actions argue that *MacDonald* was incorrectly decided because the court failed to give adequate consideration to the legislative history of the Warsaw Convention, which, they say, was not called to the court's attention. The legislative history, however, makes clear that in drafting Article 17 the delegates to the Convention specifically intended to exclude from coverage accidents occurring to passengers inside an airport terminal building. *Minutes, Second International Conference on Private Aeronautical Law, October 4–12, 1929, Warsaw* 67–84, 205–06 (R. Horner & D. Legrez transl. 1975) (*"Warsaw Minutes"*).

The Convention was the ultimate product of two conferences, at Paris in 1925 and at Warsaw in 1929. The Paris Conference established an interim committee, the Comite International Technique d'Experts Juridiques Aeriens (CI–TEJA), to draft a proposed convention for submission to the second conference. Article 20 of this draft defined the scope of the carrier's liability both as to travelers and as to goods and baggage. It made the carrier liable "from the moment when travelers, goods or baggage enter in the aerodrome of departure to the moment when they leave the aerodrome of destination." *Id.* at 264. This provision was challenged as to travelers. *Id.* at 69–75, 78–81. The Draft Article was rejected by the delegates, *id.* at 82–83, and sent back to the drafting committee, where it was split into two separate articles: Article 17 for passengers and Article 18 for goods and baggage. *Id.* at 205–06. In adopting Article 18, the Conference substantially accepted the CITEJA proposal with respect to goods and baggage, agreeing that liability should attach while "the baggage or goods are in the [custody] of the carrier, whether in an airport or on board an aircraft . . . ." *Id.* at 206. With respect to travelers, however, the Conference rejected the CITEJA draft in favor of the more limited coverage of Article 17, providing that the carrier is liable for damages sustained in the event of the injury or death of passengers only if the accident that caused the damage took place on board the aircraft or "in the course of any of the operations of embarking or disembarking." *Id.* at 82–84, 205–06.

Whatever uncertainties there may be as to the precise line drawn by Article 17, the above legislative history indicates plainly that the intent of the Warsaw Conference in rejecting the CITEJA draft and in declining to impose in Article 17 the same extent of carrier liability for passengers as that provided by Article 18 for goods and baggage was clearly to exclude liability as to passengers for accidents which occur after the passenger "has reached a safe point inside of the terminal," and "which are far removed from the operation of aircraft." *MacDonald v. Air Canada, supra* at 1405; *see Evangelinos v. Trans World Airlines, supra* at 100–01.

Subsequent commentary by Convention delegates and other aviation law

---

3. The District Courts in *Day* and *Evangelinos* divided over whether passengers injured in a terrorist attack at Hellenikon Airport, Athens, Greece, in August 1973 were "in the course of any of the operations of embarking" within the meaning of Article 17. When this attack occurred, plaintiffs were in the transit lounge, just about to board a flight to New York. The *Day* court held they were embarking and hence that the Convention applied; the *Evangelinos* court disagreed and held the Convention not applicable. The *Day* court, however, expressly distinguished the question of disembarkation, 393 F.Supp. at 222–23 (emphasis in original):

We distinguish readily the case of *Felismina v. Trans World Airlines, Inc.,* 13 Av. Cas. 17,145 (S.D.N.Y. June 28, 1974), which involves a claimed disembarking. A passenger who has left the aircraft, unlike plaintiffs is not herded in lines, and has few activities if any, which the air carrier requires him to perform at all, or in any specific sequence as a condition of completing his journey. . . .

writers confirms this view. Thus, Dr. Otto Riese, a German delegate, has written:

> La Convention de Varsovie exclut donc les accidents survenus au cours des operations preliminaires a l'embarquement et posterieures au debarquement, soit notamment pendant la periode du deplacement du passager de la gare de ville a l'aerodrome, et lors de sa presence dans les locaux de l'aerogare. O. Riese & J. LaCour, *Precis de Droit Aerien* 265 (1951).

See A. Giannini, *Saggi di Diritto Aeronautico* 233 (1932), and D. Goedhuis, *Minutes, Fifth International Congress on Air Navigation, The Hague, 1930,* at 1173 (both as cited in *Evangelinos v. Trans World Airlines, supra* at 101).

The Court holds that when the Lod Airport terrorist attack occurred, the passengers on defendant's Flight No. 132 had completed their transportation by air and were no longer "in the course of any of the operations of . . . disembarking." The Warsaw Convention and the Montreal Agreement therefore do not apply to the present actions. Accordingly, plaintiffs' motions for partial summary judgment are denied; defendent's motions for summary judgment are granted; and judgment will be entered dismissing plaintiffs' complaints to the extent that they claim jurisdiction or liability without fault under the provisions of the Warsaw Convention, as modified by the Montreal Agreement.

It is so ordered.