Geraldine KNOLL, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., Defendant.

No. 84–K–672.

United States District Court, D. Colorado.

June 12, 1985.

George E. Johnson, Blunk, Johnson & Johnson, Denver, Colo., for plaintiff.

Mary A. Wells, Stephen J. Baity, Weller, Friedrich, Hickisch, Hazlitt & Ward, Denver, Colo., for defendant.

## ORDER

KANE, District Judge.

Plaintiff Geraldine Knoll was a passenger on a Trans World Airlines (TWA) flight which landed at Heathrow Airport in London. After leaving the airplane, she walked approximately 100 yards to the first moving sidewalk, and then travelled on two moving sidewalks, approximately 100 yards each. As she approached the immigration area, she slipped on some Jack Daniels Whiskey, and fell, sustaining injuries which included a fractured elbow. She seeks $75,000 plus costs from TWA under a provision of the Warsaw Convention [1] which provides that an airline is liable for death or injury sustained by a passenger "in the course of any of the operations of embarking or disembarking."

TWA has moved for summary judgment on the issue of the airline's liability under the Warsaw Convention, maintaining that plaintiff did not fall while disembarking and that defendant is entitled to judgment as a matter of law. Rule 56 of the Federal Rules of Civil Procedure (F.R.C.P.) permits the entry of summary judgment on a claim when there is no genuine issue of material fact outstanding. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377, 1383 (10th Cir.1980). In order to determine the propriety of summary judgment, I must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made. *Id.* No margin exists for disposition of factual issues, nor does summary judgment serve as a substitute for trial when there are disputed facts. *Commercial Iron & Metal Company v. Bache & Company, Inc.*, 478 F.2d 39, 41 (10th Cir. 1973). Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Romero v. Union Pacific Railroad*, 615 F.2d 1303, 1309 (10th Cir.1980).

The sole issue is whether plaintiff was disembarking when the accident occurred. The precise meaning of the terms of a treaty or statute is a question of law. *See generally Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 392, 358 N.Y. S.2d 97, 314 N.E.2d 848 (1974) (Warsaw Convention). I note in passing that there is no law in this circuit interpreting this particular provision of the Warsaw Convention.

Plaintiff relies on *Day v. Trans World Airlines, Inc.*, 393 F.Supp. 217 (S.D.N.Y.

[1] The Warsaw Convention is officially titled the Convention for the Unification of Certain Rules Relating to International Transportation by Air. The Convention was concluded on October 12, 1929, in Warsaw, Poland. The text is found at 49 Stat. 3000 (1934). Article 17 of the Warsaw Convention provides that:

[t]he carrier shall be liable for damages sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

1975), *aff'd* 528 F.2d 31 (2nd Cir.1975), *cert. denied* 429 U.S. 890 (1976). In *Day*, the passengers had presented their tickets, received boarding passes and baggage checks, proceeded through passport and currency control pursuant to TWA's instructions, entered the lounge area, and begun to form a line at the gate for searches when a terrorist attack occurred. They would have been required to proceed to a bus which would take them 100 yards across the traffic apron to the plane. The court refused to distinguish between minor differences in the location of the plaintiffs and focussed on the activity in which plaintiffs were engaged. The district court in *Day* said of the eleven steps that must be performed by the passengers as conditions of their boarding the aircraft, "[t]here is simply no other way to 'embark' except by these eleven steps." 393 F.Supp. at 221.

The court in *Day*, however, quickly distinguished the facts before it from *Felismina v. Trans World Airlines, Inc.*, 13 Av. Cas. ¶ 17,145 (S.D.N.Y. June 28, 1974), which involved disembarking:

> A passenger who has left the aircraft, unlike plaintiffs is not herded in lines, and has few activities if any, which the air carrier *requires* him to perform at all, or in any specific sequence as a condition of completing his journey. The plaintiff in *Felismina, supra,* was not standing in line in connection with disembarking, and was not performing any acts *required by the airline as a condition of travel.*

393 F.Supp. at 223 (first emphasis in original, second emphasis added). Thus plaintiff's argument that *Day* controls in the present case is countered by dicta in *Day* itself. *See also In re Tel Aviv*, 405 F.Supp. 154 (D.P.R.1975), *aff'd Hernandez v. Air France*, 545 F.2d 279 (1st Cir.1976), *cert. denied* 430 U.S. 950, 97 S.Ct. 1592, 51 L.Ed.2d 800 (1977).

The courts have consistently refused to extend coverage of the Warsaw Convention to injuries incurred within the terminal, except in those cases in which plaintiffs were clearly under direction of the airlines. *Schmidkunz v. Scandinavian Airlines System,* 628 F.2d 1205, 1207 (9th Cir.1980) (passenger who was still within common passenger area, had not received boarding pass, was not "imminently preparing to board the plane, and was not at the time under the direction of [airline] personnel," held not "embarking"); *Maugnie v. Compagnie Nationale Air France,* 549 F.2d 1256 (9th Cir.), *cert. denied* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977) (passenger between gate and center of terminal was not disembarking); *MacDonald v. Air Canada,* 439 F.2d 1402, 1405 (1st Cir.1971) (the "operation of disembarking has terminated by the time the passenger has descended from the plane by means of whatever mechanical means have been supplied, and has reached a safe point inside the terminal, even though he may remain in the status of a passenger of the carrier while inside the building"); *Rolnick v. El Al Israel Airlines, Ltd.,* 551 F.Supp. 261 (E.D.N.Y.1982) (passenger who slipped on airport escalator was not embarking); *Ricotta v. Iberia Lineas Aereas De Espana,* 482 F.Supp. 497 (E.D.N.Y.1979), *aff'd* 633 F.2d 206 (2nd Cir.1980) (passenger who fell from airport bus owned and operated by airline which was taking passengers from aircraft to terminal was disembarking).

The sole argument advanced in plaintiff's affidavits is that she was, *in effect,* still under the direction of TWA when she fell. The facts before us are undisputed. The plaintiff in her own deposition admits that she had walked off the airplane, walked through the jetway, and walked some distance away from the gate before she fell. (Plaintiff's husband estimates the distance was at least 300 yards. Page 34, Mr. Knoll's transcript.) The area in which plaintiff fell was not leased by TWA; services for the area are provided

by the British Airport Authority.[2] (Affidavit of C.T. Levey, station manager of TWA operations at Heathrow.) A TWA employee came to the aid of plaintiff after she fell, cordoning off an area for privacy, expediting immigration and customs steps for Mr. Knoll, and driving Mr. Knoll to join plaintiff at the airport clinic. (Geraldine Knoll's affidavit, page 3.) TWA employees on the plane distributed landing cards, advised passengers to present them at immigration, and announced that TWA ground agents would be available to offer assistance if needed. When plaintiff fell she was in the process of looking for signs directing passengers to immigration.

Plaintiff argues that whether or not TWA had exclusive use of the area where the accident occurred does not determine whether plaintiff was in the process of disembarking. Plaintiff asks us to infer liability based on the fact that TWA personnel had directed her toward immigration and that a TWA employee was one of the persons that aided her when she fell. There is no law to support such a finding of liability. Construing the affidavits liberally in plaintiff's favor, and applying the tripartite test which evaluates plaintiff's location at the time of the accident, activity of plaintiff, and control by the airline, I find that plaintiff was not disembarking when she fell. Plaintiff was in a concourse of the airport which was not near enough to the TWA gate from which she had walked to warrant a finding of liability. She was not under the control of airline agents at that point, but involved in the activity of looking for immigration. Most importantly, Plaintiff's remaining activities (e.g. immigration, customs) were not conditions imposed by the airline for her disembarking. They were conditions imposed

by the host country in which plaintiff and her husband were travelling.[3] Plaintiff, therefore, was not disembarking when the accident occurred.

It is therefore ORDERED that defendant's motion for summary judgment is granted. Each party is to bear her/its own costs.

---

**2.** Plaintiff at no point argues that TWA had exclusive control over the area. Plaintiff submitted no affidavits countering C.T. Levey's affidavit regarding TWA's lack of control over the area where plaintiff fell.

**3.** Plaintiff points out that some of the conditions which were to be met in *Day,* 393 F.Supp. 217

(S.D.N.Y.1975), were imposed by the Greek government and not TWA, and yet held to be essential steps in embarking. I have already noted that *Day* distinguished the facts before it from a disembarking case (*see supra*). Furthermore, the facts before us are significantly dissimilar.