# DECISIONS

OF THE

## APPEALS COURT

OF

## MASSACHUSETTS

DAWN J. STOVALL, individually and as administratrix,[1] *vs.*
NORTHWEST AIRLINES, INC.

No. 91-P-695.

Suffolk. May 19, 1992. - July 9, 1992.

Present: FINE, JACOBS, & GREENBERG, JJ.

*Warsaw Convention. Airport. Carrier*, Air, Passengers, Damages. *Words*
"Embarking or disembarking."

Discussion of cases defining the scope of liability under art. 17 of the War-
saw Convention for accidents in and around an airport terminal result-
ing in personal injury to a passenger on an international airline flight.
[3-5]
An international air carrier was not liable on a claim under art. 17 of the
Warsaw Convention in circumstances where the two international pas-
sengers were injured outside the terminal buildings while transferring
to a domestic flight of the same carrier on a public bus, not controlled
by the airline, about midway through a two and one half hour stop-
over. [4-6]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 6, 1985.

---

[1] Of the estate of Esther A. Shaleen.

The case was heard by *John Paul Sullivan*, J., on a motion for summary judgment.

*John N. Romans* of New York (*Ralph T. Lepore, III*, with him) for the defendant.

*Thomas E. Cargill, Jr.* (*Mary Anne Hill* with him) for Dawn J. Stovall.

FINE, J. This appeal concerns the scope of an international air carrier's liability under art. 17 of the Warsaw Convention,[2] as amended by the Montreal Agreement,[3] which provides that an airline is strictly liable in an amount up to $75,000 for injuries sustained by a passenger on an international flight during "the operations of embarking or disembarking." The defendant, Northwest Airlines, Inc. (Northwest), filed a motion for summary judgment claiming that, for purposes of the Warsaw Convention, neither the plaintiff, Dawn J. Stovall, nor her mother, Esther A. Shaleen, was in flight or in the course of embarking or disembarking when their accident occurred. The motion judge denied Northwest's motion and ordered summary judgment in favor of the plaintiff. In resolving the appeal from that order, we are guided by the need for uniformity in interpretation of the treaty language. See *Maugnie* v. *Compagnie Nationale Air France*, 549 F.2d 1256, 1258 n.2 (9th Cir. 1977).

---

[2]Convention for Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, TS 876, 49 U.S.C. § 1502 note (1982), a multilateral treaty, ratified for the United States by the President with the consent of the Senate on October 29, 1934, and, according to the United States Constitution, art. VI, par. 2, to be interpreted under Federal law as "the supreme law of the land."

[3]Agreement Civil Aeronautics Board 18900; see Liability Limitations of Warsaw Convention and Hague Protocol, 31 Fed. Reg. 7302 (1966). Under the Convention as originally adopted, liability was based on the airline's fault. See Warsaw Convention art. 20(1). The carriers agreed in the Montreal Agreement to adopt a system of absolute liability for covered accidents. See Liability Limitations of Warsaw Convention and Hague Protocol, 31 Fed. Reg. 7302; *Buonocore* v. *Trans World Airlines, Inc.*, 900 F.2d 8, 9 (2d Cir. 1990). The Montreal Agreement increased the limit of an air carrier's liability to $75,000 per passenger. See Liability Limitations of Warsaw Convention and Hague Protocol, 31 Fed. Reg. at 7302.

The material facts are undisputed. In the spring of 1983, Stovall and Shaleen purchased roundtrip coach tickets for Northwest flights between Minneapolis and London. Although the tickets provided for roundtrip transportation between Minneapolis and London, the flight in each direction was scheduled to stop in Boston, with a change of airplanes. On November 9, 1983, Stovall and Shaleen began their return flight. The airplane landed at Logan Airport in Boston, and passengers were processed through immigration and customs in the international terminal. When Stovall and Shaleen completed that process, their baggage was taken by Northwest personnel, and they were given vouchers for a public Massachusetts Port Authority bus which was to take them to the domestic air terminal where they were to board a different plane to continue their flight. The bus, to which Northwest personnel escorted Stovall and Shaleen, was crowded. Although they believed they were required to take the bus to continue their trip, nothing was said or done to prevent them from making alternative arrangements for reaching the domestic terminal. As the bus rounded a curve, the rear doors opened, and Stovall and Shaleen fell from the stairway where they were standing. Stovall was injured, and her mother, Shaleen, was killed.[4]

In the event of injury to a passenger on an international airline flight art. 17 of the Warsaw Convention provides:

> "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

There is no dispute that the plaintiff and her mother were injured in an "accident" as that term is used, and that the

---

[4]The plaintiff brought various claims of liability other than the Warsaw Convention claims against Northwest, General Motors Corporation (the manufacturer of the bus), the Massachusetts Port Authority, and other parties, but these claims were settled and are not involved in this appeal.

accident did not occur while they were "on board the aircraft." The sole issue is whether Stovall and Shaleen were injured "in the course of any of the operations of embarking or disembarking." Neither the text of the convention, nor its history, clearly defines the scope of liability for accidents in and around an airport terminal.[5]

Some courts, looking only to the passenger's location at the time of the accident, have defined the scope of liability narrowly. Thus, a passenger who fell in the baggage area of an airport was deemed to have disembarked from "the time [he] ha[d] descended from the plane by the use of whatever mechanical means ha[d] been supplied and ha[d] reached a safe point inside of the terminal, even though he may [have] remain[ed] in the status of a passenger of the carrier while inside the building." *MacDonald* v. *Air Canada*, 439 F.2d 1402, 1405 (1st Cir. 1971). With the advent of airport terrorism, a growing risk of air travel, courts have been called upon to extend the protection of the treaty to passengers within airport terminals.[6] In *Day* v. *Trans World Airlines*, 528 F.2d 31, 33 (2d Cir. 1975), and numerous other cases following it, courts have held that coverage would depend upon the particular facts analyzed on the basis of a number of factors: (1) the activity in which the passenger was engaged at the time of the accident; (2) the degree of control the airline had over the passenger at the time; (3) the physical proximity of the passenger to the aircraft; and (4) the closeness of the time of the accident to the passenger's entering or leaving the airplane. See *Evangelinos* v. *Trans World Airlines, Inc.*, 550 F.2d 152, 155 (3d Cir. 1977).

---

[5]We thank the defendant for providing us with an extensive discussion of the treaty's relevant history. Of particular interest is the fact that earlier drafts of the Convention, both rejected, would have, in one instance, extended liability to the entire airport facility, while another limited liability to accidents only when the passenger was on the aircraft. See Note, Warsaw Convention — Air Carrier Liability for Passenger Injuries Sustained Within a Terminal, 45 Fordham L. Rev. 369, 371 (1976).

[6]See, e.g., *Shinn* v. *El Al Israel Airlines*, 21 Av. Cas. (CCH) 18,331 (D. Col. 1989); *Sweis* v. *Trans World Airlines, Inc.*, 681 F. Supp. 501 (N.D. Ill. 1988).

Even under the more expansive *Day* test, which is now routinely applied whether the issue raised relates to embarkation or debarkation, the plaintiff in this case may not prevail. The accident occurred while the two women were engaged in the activity of traveling on a public bus from one terminal to another. True, they were required to travel between terminals to continue their flight, but the activity in which they were engaged presented none of the dangers generally associated with air travel with which the Warsaw Convention was concerned. See *Day* v. *Trans World Airlines, Inc.*, 528 F.2d at 34; *Shinn* v. *El Al Israel Airlines*, 21 Av. Cas. (CCH) 18,331, 18,334 (D. Col. 1989). Airline personnel exerted some restrictions and control over Stovall and Shaleen's activities by providing them with vouchers and escorting them to the Massachusetts Port Authority bus. The airline did not tell them they were required to take that particular bus, however, and they were free to proceed by any means of transportation to the domestic terminal. See *Martinez Hernandez* v. *Air France*, 545 F.2d 279, 284 (1st Cir. 1976); *Knoll* v. *Trans World Airlines, Inc.*, 610 F. Supp. 844, 846-847 (D. Colo. 1985); *Rabinowitz* v. *Scandinavian Airlines*, 741 F. Supp. 441, 446 (S.D.N.Y. 1990); *Curran* v. *Aer Lingus*, 17 Av. Cas. (CCH) 17,560, 17,562 (S.D.N.Y. 1982). If any agency was directly in control of the two women at the time of the accident, it was the Massachusetts Port Authority, operating the bus, rather than Northwest. With regard to the relative proximity of the accident scene to the aircraft, the accident occurred a considerable distance from the airplane, the tarmac, or even the type of secure passenger waiting area on occasion found to be covered. See *Martinez Hernandez* v. *Air France*, 545 F.2d at 282; *Maugnie* v. *Compagnie Nationale Air France*, 549 F.2d at 1262; *Buonocore* v. *Trans World Airlines, Inc.*, 900 F.2d 8, 9 (2d Cir. 1990). Contrast *Ricotta* v. *Iberia Lineas Aereas De Espana*, 482 F. Supp. 497, 499-500 (E.D.N.Y. 1979) ("accident occurred immediately after plaintiff had descended the steps of the aircraft" and "prior to time that she entered any common passenger area"). Finally, with regard to the time

factor, more than an hour had elapsed since the flight from London had landed, and the Minneapolis flight was not scheduled to depart for yet another two and a one-half hours. Compare *Schmidkunz* v. *Scandinavian Airlines Sys.*, 628 F.2d 1205, 1207 (9th Cir. 1980); *Buonocore* v. *Trans World Airlines, Inc.*, 900 F.2d at 10; *Rabinowitz* v. *Scandinavian Airlines*, 741 F. Supp. at 446.

The plaintiff emphasizes the facts, different in some respects from those in the numerous cases cited by Northwest in which no liability was found, that at the time of the accident Stovall and Shaleen remained passengers on the Northwest flight from London to Minneapolis, they were in possession of their boarding cards, their baggage was in custody of the airline, and Northwest had made arrangements for their transportation between terminals. The plaintiff contends, therefore, that the women were on one continuous journey to their final destination. The entire duration of a stop-over in the course of such a journey, however, is not necessarily included within "the operations of embarking or disembarking" as that phrase is used in the Warsaw Convention. See *Rabinowitz* v. *Scandinavian Airlines*, 741 F. Supp. at 447. Where an accident occurs, as this one did, outside any airport terminal building while the passengers are on a public bus, substantially removed both in time and space from their flight, we think the uniform result in courts throughout this country would be that the accident is not covered by the Warsaw Convention. The risk that materialized was not a risk of aviation.

> *Judgment reversed.*
> *Judgment for the defendant.*