Margie L. UPTON, Individually and as Administratrix of the Estate of Larry L. Upton, Deceased, etc., and Jerrie Nimtz and Judy Nimtz, Individually, and Rita Mae Glantz, as Administratrix of the Estate of Michael John Nimtz, Deceased, and Alfred E. Caswell, Plaintiffs,

v.

IRAN NATIONAL AIRLINES CORPORATION, Defendant.

No. 75 Civ. 6084 (CMM).

United States District Court, S. D. New York.

May 5, 1978.

Kreindler & Kreindler, New York City, for plaintiffs; Alan J. Konigsberg, James D. Veach, New York City, of counsel.

Condon & Forsyth, New York City, for defendant; George N. Tompkins, Jr., Desmond T. Barry, Jr., New York City, of counsel.

METZNER, District Judge:

This is an action for wrongful death and for personal injuries sustained when the roof of the main terminal at Mehrabad International Airport, Teheran, Iran, collapsed on December 5, 1974.

Defendant moves pursuant to Fed.R. Civ.P. 12(b)(6) and 56 for partial summary judgment on the issue of liability on plaintiffs' Second and Sixth Claims. Plaintiffs Upton and Caswell cross-move for partial summary judgment on those claims.

The claims at issue are based upon the Warsaw Convention. Article 17 thereof provides:

> "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if

the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

The Montreal Agreement, Agreement CAB 18900 (1966), which modified the Warsaw Convention, imposed strict liability for injuries described in Article 17 and established maximum recovery per passenger at $75,000.

■ At the time of the roof collapse, Larry Upton, plaintiff's decedent, and Alfred E. Caswell, plaintiff (hereinafter referred to as plaintiffs), were booked to travel from Teheran to Zurich on defendant's Flight # 725. Their tickets provided for "international transportation" as defined in Article 1(2) of the Warsaw Convention. Therefore, plaintiffs' right to recover against Iran National Airlines is governed exclusively by the Warsaw Convention. Art. 24.

■ Defendant does not dispute that the roof collapse constituted an accident within the definition of Article 17. The only issue before the court is whether, under the facts of this case, plaintiffs were "in the course of any of the operations of embarking" within the meaning of Article 17. The interpretation of a treaty presents a question of law which is appropriately considered upon a motion for summary judgment. *Day v. Trans World Airlines, Inc.*, 393 F.Supp. 217, 220 (S.D.N.Y.), *aff'd*, 528 F.2d 31 (2d Cir. 1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (hereinafter *Day I*).

Taking into account the steps required by the airline to complete embarkation, the test for liability is based upon three elements: "activity (what the plaintiffs were doing), control (at whose direction), and location." *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 33 (2d Cir. 1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (*Day II*).

The affidavits show that plaintiffs arrived at the airport at approximately 10:00 A.M. to board their flight scheduled for departure at noon. They presented their tickets at the Iran Airlines portion of the ticket counter in the terminal and received boarding passes and baggage checks.

At that point, plaintiffs were advised that the flight would be delayed due to inclement weather. They moved to a general public seating area adjacent to the ticket counter to await further flight information. They continued to wait into the afternoon, but they took no further steps in embarkation. The roof collapsed at approximately 3:00 P.M.

In order for these passengers to board the airplane, they would have had to move through a passport control point, then through customs control, and into a transit passenger lounge which is reserved for departing international passengers. The last step before leaving the terminal would be the security check.

■ Although the Warsaw Convention does not exclude évents merely because they transpire within a terminal building, *Day II*, 528 F.2d at 33, it rejected sweeping liability for the entire period between the time a passenger enters the airport until he is safely on board the aircraft. *Day I*, 393 F.Supp. at 222. *See* Note, *Warsaw Convention—Air Carrier Liability for Passenger Injuries Sustained Within a Terminal*, 45 Fordham L.Rev. 369 (1976).

■ The fact that plaintiffs remained at the terminal, after other flights were cancelled, because of representations by defendant's personnel that their flight would depart does not mean that plaintiffs were under the airline's control. Plaintiffs were in a public waiting area, not in a restricted area reserved for departing passengers. They were free to proceed to the restaurant, to visit with nonpassengers, or to exit the building. They had not as yet entered into any control situation, as far as the defendant was concerned.

Accordingly, defendant's motion for partial summary judgment is granted, and plaintiffs' cross-motion is denied.

So ordered.