**Mollie ROLNICK and Harry Rolnick, Plaintiffs,**

v.

**EL AL ISRAEL AIRLINES, LTD., Defendant.**

**No. 81 CIV 0758.**

United States District Court, E.D. New York.

Oct. 15, 1982.

David Jaroslawicz, New York City, for plaintiffs.

Austin P. Magner, Wendy A. Grossman, Condon & Forsyth, New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiffs, husband and wife, bring this action against defendant airline for personal injury sustained in an Israeli airport prior to an international flight. It is undisputed that the Warsaw Convention provides the basis for liability, if any. Article 17 of that document provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking. 49 Stat. 3000 (1934).

Defendant moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendant's motion is granted as to the Warsaw Convention basis of liability, but denied in all other respects.

### FACTS

Plaintiffs were in Ben Gurion International Airport in Israel to board a flight for the United States. As with all commercial flights, there were several steps that passengers had to take before boarding the plane: submission of baggage to security inspectors for clearance check-in; obtaining of baggage checks and boarding passes; passage through passport control; hand baggage check; passage through departure gate (sometimes preceded by a period of time in the "general" waiting area); surrender of tickets; and procession to connecting buses.

Plaintiffs had checked their baggage and obtained their boarding passes, but had not yet gone to passport control, when Harry Rolnick slipped on an escalator and fell

backward on Mollie Rolnick, who was standing directly behind her husband. Mollie, in turn, fell backward and suffered injuries. Her husband helped her to her feet. After Mrs. Rolnick had rested for a few moments, the Rolnicks, not wishing to miss their plane, proceeded to passport control. While on the plane, plaintiffs allegedly attempted to procure medical care from defendant, but were unsuccessful.

## THE LAW

### A. *The limitation of liability under Article 17 of the Convention*

There is a sharp distinction under the Convention between a carrier's liability for personal injuries and for property damage. The Convention does not impose liability upon an airline for all personal injuries incurred while a passenger is in the airport preparing for departure. By contrast, if there is damage to goods or baggage, liability attaches from the time the goods or baggage arrive at the airport of departure until the time they leave the airport of arrival. The reason for the distinction is obvious:

> Because passengers have volition, and can get themselves into situations of peril which inanimate articles such as goods and baggage cannot do, liability should be limited to those times when a passenger is exposed to the dangers of aviation. Although most accidents occur while passengers are on board the aircraft, it is obvious that a passenger may be exposed to certain risks inherent in aviation before he actually boards the plane, and after he has left the plane.

*Day v. Trans World Airlines, Inc.,* 393 F.Supp. 217, 222 (S.D.N.Y.) (*mem.*), *aff'd*, 528 F.2d 31 (2d Cir.1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976).

The "risks inherent in aviation" include injuries that occur while a passenger is embarking and disembarking, and the Convention imposes liability for such injuries. The task of fixing the point at which embarking begins and disembarking concludes, however, devolves upon the courts.

The Second Circuit, recognizing that a definition of "embarking" is elusive, has held that the test is "tripartite," focusing on "activity (what the plaintiffs were doing), control (at whose direction), and location." *Day v. Trans World Airlines, Inc.,* 528 F.2d 31, 33 (2d Cir.1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). Application of this admittedly fluid approach leads me to conclude that the plaintiffs were not in the course of "embarking" when the injury occurred.

In *Day, supra,* Palestinian terrorists attacked several people at Hellenikon Airport in Athens, Greece. The attack upon plaintiffs occurred after they had passed through passport control, and were in an area reserved for passengers awaiting boarding. Having heard the announcement of imminent departure, plaintiffs were lined up at the departure gate when the terrorists opened fire.

Focusing on the fact that the passengers were in line before boarding a TWA flight, the District Court held, as a matter of law, that "the . . . injuries were incurred as a result of an accident during the course of embarking and [were] actionable under the Warsaw Convention. . . ." 393 F.Supp. at 223. The Second Circuit, in affirming, stressed the degree of control being exercised by defendants at the time of the injury, and noted that all but the final pre-boarding stages had been completed:

> [The passengers] were assembled at the departure gate, virtually ready to proceed to the aircraft. [They] were not free agents roaming at will through the terminal. They were required to stand in line at the direction of TWA's agents . . . [as] a prerequisite to boarding. Whether one looks to the passengers' activity (which was a condition to embarkation), to the restriction of their movements, to the imminence of boarding or even to their position adjacent to the terminal gate, we are driven to the conclusion that the plaintiffs were 'in the course of embarking.' "

528 F.2d 33–34 (2d Cir.1975).

The differences between *Day* and the present case are obvious and many. Plaintiffs herein had not gone through passport control, were not in an area reserved for El Al Israel passengers (or, indeed, even for passengers in general), and were not acting at the behest of airline officials.

This case is much closer to *Upton v. Iran Nat'l Airlines Corp.*, 450 F.Supp. 176 (S.D. N.Y.1978), where the plaintiffs had received their boarding passes and baggage checks, and were seated in a general public seating area near the ticket counter, when the roof collapsed on them. Applying the *Day* factors, the Court focused on the airline's lack of control over the plaintiffs: "[They] were in a public waiting area, not in a restricted area reserved for departing passengers. They were free to proceed to the restaurant, to visit with nonpassengers, or to exit the building. They had not as yet entered into any control situation, as far as the defendant was concerned." 450 F.Supp. at 178. Accordingly, I find that plaintiffs were not "embarking," and are thus without remedy under the Warsaw Convention.[1]

B. *Liability for a Dangerous Condition*

In the alternative, plaintiffs seek to hold the airline liable by reason of the allegedly dangerous condition of the escalator. Under New York law,[2] liability for dangerous conditions on premises extends only to those occupying or controlling the premises. *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980); *Basso v. Miller*, 40 N.Y.2d 233,

386 N.Y.S.2d 564, 352 N.E.2d 868 (1976). Plaintiffs do not dispute this legal principle, but argue that they cannot determine the issue of ownership or control absent a deposition of defendant. (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 7).

There appears to be some dispute as to whether defendant resisted the deposition, as plaintiffs claim, or whether the parties agreed to postpone the taking of the deposition, as defendant claims. Defendant's supervisor of insurance and claims states that El Al Israel "has never owned, leased, maintained or otherwise controlled the escalator leading to the Passenger Departure Hall ... nor ... the area immediately surrounding such escalator." (Affidavit of Dalia Carmel, page 12).

Although it thus appears that the airline is not liable for the dangerous condition, the plaintiffs must be granted an opportunity to depose defendant's supervisor on the ownership and control issue. This conclusion follows from the principle that summary judgment is inappropriate when, as here, a disputed fact is peculiarly within the knowledge of one of the parties. *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir.1968) (*en banc*); *Subin v. Goldsmith*, 224 F.2d 753, 759–60 (2d Cir.1955). The defendants' motion for summary judgment is therefore denied, but defendant is granted leave to move this Court anew after plaintiff has had an opportunity to engage in discovery as to the ownership and control issues. *Schoenbaum v. Firstbrook*,

---

**1.** At least one commentator has suggested that, although "the purposes underlying the adoption of the Warsaw Convention can be viewed as lending support to the interpretations advanced by the Second and Third Circuits," the time may be ripe for expanding the liability under the Convention in view of the increased financial wherewithal of the airlines. *Note, Warsaw Convention—Air Carrier Liability for Passenger Injuries Sustained Within a Terminal*, 45 Fordham L.Rev. 369, 388. Whatever the merits of this argument, the short answer is that liability under the Convention has not, in fact, been expanded, either by amendment or by a new interpretation in this Circuit. I therefore apply the guidelines established in *Day*.

**2.** Plaintiff and defendant are both New York residents, but the accident occurred in Israel. Without resort to conflict of law principles, New York law is applicable because a plaintiff who wishes to invoke the law of a foreign jurisdiction is charged with the responsibility of providing the court with information sufficient to determine the content of the foreign law. *See New York Proposed Code of Evidence*, § 202(c) and (g). Plaintiffs have not furnished the Court with any evidence of the Israeli law; indeed, they have not so much as suggested that Israeli law should apply in this case.

*supra,* at 218; *Beau Rivage Restaurant, Inc., v. United States,* 511 F.Supp. 73, 76 (S.D.N.Y.1980).[3]

For the reasons stated above, defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is granted in part and denied in part.

SO ORDERED.

**3.** As a final argument, plaintiffs urge the Court to pierce the corporate veil to hold El Al Israel responsible for the accident that occurred on premises owned and operated by the State of Israel, defendant's majority shareholder. This argument is so frivolous as to scarcely warrant the Court's attention. It suffices to say that the separate, legal identity of a corporation will be ignored only under extreme circumstances. No such circumstances have been alleged by plaintiff. *See Carey v. National Oil Corp.,* 592 F.2d 673, 676 (2d Cir.1979); *Soanes v. Baltimore & Ohio R.R.,* 89 F.R.D. 430 (E.D.N.Y. 1981).