**Patricia BEAUDET, Plaintiff,**

v.

**BRITISH AIRWAYS, PLC, a corporation, Defendant.**

No. 93–C–381.

United States District Court, N.D. Illinois, Eastern Division.

May 10, 1994.

---

Brian Murphy, Hofeld & Schaffner, Chicago, IL, for plaintiff.

J. Robert Geiman, David Joseph Novotny, Donald Alan Murday, William A. Chittenden, III, Peterson & Ross, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This is a negligence action brought by the Plaintiff, Patricia Beaudet, against British Airways, PLC ("British Airways") for injuries she suffered while waiting for a British Airways flight in the British Airways Club World Lounge at Heathrow Airport in Houn-

slow, Middlesex, England on March 23, 1992. British Airways contends that this case is governed by the Warsaw Convention and a damage limitation clause contained therein. Before the Court are the parties' cross motions for summary judgment on those issues. For the following reasons, Plaintiff's Motion for Partial Summary Judgment is granted; the Defendant's motion is denied.

### I. FACTS

The facts, taken in a light most favorable to the Defendant, are as follows.

On March 23, 1992, the Plaintiff held tickets on Defendant's Flight No. 297 leaving from Heathrow Airport and arriving at O'Hare Airport in Chicago, Illinois. Upon arriving at the airport, the Plaintiff entered Terminal 4, which is primarily used by British Airways, although three other airlines use gates in the terminal. Although her flight was scheduled to leave at 2:15 p.m., and would have been called for boarding no earlier than 1:15 p.m.,[1] Plaintiff arrived at the terminal at 11:00 a.m. Once inside the terminal, Plaintiff presented her passenger ticket at the British Airways ticket counter, handed over her baggage to a British Airways representative, and asked directions to the British Airways Club World Lounge (the "Club World Lounge" or the "Lounge").

The Club World Lounge is maintained and controlled by British Airways and is operated for the benefit of British Airways's business class passengers. However, ticketed passengers of other carriers having certain access cards are also permitted access to the Lounge. Plaintiff was eventually injured there.

Before arriving at the Lounge, Plaintiff passed through a central search area through what is known as the "Fast Zone", a passageway from the check-in area to the departure lounge. At the central search area, the British Airport Authority staff checked the validity of Plaintiff's boarding pass, an immigration officer checked Plaintiff's passport, and

---

[1] It is undisputed that the Defendant's flights are not called for boarding until sixty minutes before departure.

Plaintiff proceeded through a security control point where x-ray machines were located.

Having cleared security, Plaintiff was permitted access to the departure lounge, or "sterile" area of the terminal. This area contains the Club World Lounge and various shops; it is limited to ticketed passengers with passports and boarding passes. Once inside the "sterile" area, passengers such as the Plaintiff may take an elevator down to the Club World Lounge.

Once inside the "sterile" area, Plaintiff went to the Lounge, where a British Airways employee checked her boarding pass before allowing her to enter. Plaintiff apparently entered the Lounge; but, prior to her accident, left the Club World Lounge to shop in a Liberty of London store and to have her luggage tags laminated, all within the "sterile" area.

After shopping, Plaintiff returned to the Lounge to relax, as her flight was not scheduled to leave for another hour and a half or two hours. At approximately either 12:10 p.m. or 12:45 p.m., Plaintiff approached a magazine rack inside the Lounge in an area which had recently been mopped and marked with yellow warning signs.[2] She slipped, tried to steady herself by grabbing the magazine rack, fell, and pulled the magazine rack over on top of her. Among other injuries, the Plaintiff suffered a fractured pelvis and has a permanent ¾ inch shortening of her leg.

The Defendant has made an offer of judgment in the amount of $75,000, the damage cap set out in the Montreal Agreement in accordance with the Warsaw Convention. The Plaintiff has thus far rejected the Defendant's offer, contending that the Warsaw Convention and the damage limitation provided by the Montreal Agreement do not apply to this case. The instant motions are an attempt to resolve that dispute.

**2.** The parties dispute the time that Plaintiff was injured, and thus the time that she returned to the Lounge. She has stated that she thought she was injured at 12:45 p.m. However, one of Defendant's agents has stated that the time was approximately 12:10. Each party's factual statement is against its own interest, but, in the opinion of the Court, the time disagreement is immaterial.

## II. ANALYSIS

The Warsaw Convention is actually titled "Convention for the Unification of Certain Rules Relating to International Transportation By Air", 49 Stat. 3000 (1934), *reprinted in* 49 U.S.C.A. § 1502 note (West 1976) [hereinafter referred to as the "Warsaw Convention" or the "Convention"]. The Convention is a multinational convention for the unification of certain rules relating to international transportation by air. 49 U.S.C.A. § 1502 historical note (West 1976). The United States became a party to the Convention on October 29, 1934.

Article 22(1) of the convention limited the liability of any carrier "in the transportation of passengers" to a sum of 125,000 but indicated that "by special contract, the carrier and the passenger may agree to a higher limit of liability."[3] Due to complaints that the liability limit provided in article 22(1) was too low, several air carriers agreed to a higher limit, in the amount of $75,000. This agreement, known as the Montreal Agreement, Agreement CAB 18900, was approved by the Civil Aeronautics Board on May 13, 1966 consistent with article 22(1). 49 U.S.C.A. § 1502 note (1976). Under the Montreal Agreement, air carriers agreed to waive the defense of due care available to them under the Warsaw Convention, thus imposing strict liability, and limiting liability to $75,000. *Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501, 503 n. 6 (N.D.Ill.1988).

The issues now before the Court involve a dispute over the interpretation of the Warsaw Convention, not the Montreal Agreement. The Defendant contends that this case falls within the scope of the Convention; Plaintiff contends that it does not. This type of dispute is a matter of federal law and federal treaty interpretation. *Schroeder v. Lufthansa German Airlines,*

**3.** The only authentic text of the Warsaw Convention is in French. *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 534, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991). However, because there is no issue of interpretation that turns on the French words, the Court will use the American translation, which begins at 49 Stat. 3000, 3014 (1934).

875 F.2d 613, 617 (7th Cir.1989) (quoting *Maugnie v. Compagnie Nationale Air France,* 549 F.2d 1256, 1258 (9th Cir.), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977)).[4] In interpreting a treaty, the Court must begin "with the text of the treaty and the context in which the written words are used." *Air France v. Saks,* 470 U.S. 392, 396–97, 105 S.Ct. 1338, 1340–41, 84 L.Ed.2d 289 (1985).

By its own terms, the Convention governs the "international transportation of persons, baggage, or goods performed by aircraft." Warsaw Convention, Ch. I, art. 1(1). International transportation is defined in article 1(2) as follows:

> (2) For the purposes of this convention the expression "international transportation" shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention. Transportation without such an agreed stopping place between territories subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party shall not be deemed to be international for the purposes of this convention.

Warsaw Convention, Ch. I, art. 1(2). A review of this language indicates that "international transportation" is defined as "any transportation" that meets certain conditions. While this definition suffices to resolve disputes over whether or not certain transportation by an airline qualifies as "international", it does little to explain the word "transportation", most likely because that word would seem to have a common meaning known to all who might seek to apply it.

Here, however, there is a dispute over whether Plaintiff's injury comes under the Convention. Generally, cases discussing disputes of this nature turn on an interpretation of Article 17 of the Convention. *See, e.g., Day v. Trans World Airlines, Inc.,* 528 F.2d 31 (2d Cir.1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (analyzing Article 17 to determine if an airline was liable under the Convention for deaths of passengers occurring in a terminal during a terrorist attack); *Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501 (N.D.Ill.1988) (same). That article says:

*Article 17*

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Warsaw Convention, Ch. III, art. 17. Thus, if a plaintiff suffers bodily injury "on board the aircraft or in the course of any of the operations of embarking or disembarking", the Warsaw Convention governs the case. At minimum, then, "transportation" in articles 1(1) and 1(2) must include those actions taken by a carrier with respect to a passenger "on board the aircraft or in the course of any of the operations of embarking or disembarking."

The Defendant contends that the Plaintiff was "in the course of embarking" when she was injured. If so, this case clearly comes under the Convention. Thus, the Court first turns to an analysis of Article 17. As will be demonstrated, this analysis will require further inquiry into the meaning of "international transportation."

A. Operations of Embarking

There is no dispute that the Plaintiff was not "on board the aircraft" or "disembarking." Thus, to invoke Article 17, the Defendant must show that the Plaintiff was per-

---

**4.** The parties have not addressed themselves to the issue of what law governs the dispute if the Warsaw Convention does not apply. This issue need not be addressed to resolve the motions before the Court.

forming "any of the operations of embarking" when she was injured. That language presents the puzzle of when a plaintiff may be said to be doing such operations.

■ At minimum, Article 17's "embarkment" language does not extend to "all injuries a passenger sustained from the time he first entered the airport of departure until the moment he left the airport of arrival." *See Schroeder v. Lufthansa German Airlines,* 875 F.2d at 618. Such a proposal was expressly rejected by the delegates of the Convention. *See id.* (citing *Maugnie v. Compagnie National Air France,* 549 F.2d 1256, 1260 (9th Cir.), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977)), and *Martinez Hernandez v. Air France,* 545 F.2d 279, 283 (1st Cir.1976), *cert. denied,* 430 U.S. 950, 97 S.Ct. 1592, 51 L.Ed.2d 800 (1977), and *Day v. Trans World Airlines, Inc.,* 528 F.2d 31, 35 (2d Cir.1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). Beyond this, the federal courts have adopted multifactor tests to determine whether a plaintiff may be said to have been injured during "any of the operations of embarking."

■ In the Seventh Circuit, the proper test for determining the scope of "any of the operations of embarking" requires the Court to look at the total circumstances surrounding the Plaintiff's accident, "with particular emphasis on location, activity, and control." *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 617–18 (7th Cir.1989). This approach represents a combination of the multi-factor test applied by the Second Circuit in *Day v. Trans World Airlines, Inc.,* 528 F.2d 31 (2d Cir.1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (using a "triparte test" considering activity, control, and location), and employed by both the First and Third Circuits and district courts in this district, *see Martinez Hernandez v. Air France,* 545 F.2d 279, 282 (1st Cir.1976), *cert. denied,* 430 U.S. 950, 97 S.Ct. 1592, 51 L.Ed.2d 800 (1977); *Evangelinos v. Trans World Airlines, Inc.,* 550 F.2d 152, 155 (3d Cir.1977); *Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501 (N.D.Ill.1988), with a "total circumstances" test employed by the Ninth Circuit in *Maugnie v. Compagnie Nationale Air France,* 549 F.2d at 1262

(indicating that the proper inquiry under Article 17 was not limited to the *Day* analysis). Under the Seventh Circuit approach, or either of the others, the Plaintiff in this case was not performing "any of the operations of embarking."

■ Looking first to the three factors emphasized in *Day,* the Court finds that these factors favor a finding that the plaintiff was not in the course of embarking. First, location. This factor originated with a now rejected rule that required solely an inquiry into the passenger's location. Once the passenger had reached a "safe" point within the terminal, the Convention no longer applied. *See MacDonald v. Air Canada,* 439 F.2d 1402 (1st Cir.1971). While the location of a passenger at the time of injury is but one factor to be considered, generally, the closer a passenger is to the gateway, or jetway or "jetty", the more likely the passenger is performing "any of the operations of embarking." *See, e.g., Jefferies v. Trans World Airlines, Inc.,* No. 85–C–9899, 1987 WL 8168, 1987 U.S. Dist. LEXIS 2053 (N.D.Ill. March 13, 1987) (finding that the plaintiff was in the course of embarking when she was injured twelve feet from the gate room of her departing flight). Also, location may include a reference to an area owned or leased by the defendant. *See Schroeder v. Lufthansa German Airlines,* 875 F.2d at 618 (indicating that one reason Article 17 did not govern the plaintiff's case was because her injury occurred outside neither owned nor leased by the airline defendant).

Here, the Plaintiff was nowhere near the gateway. In fact, she was on a different level of the airport, potentially hundreds of yards away from any gate from which she might board her plane. Plaintiff argues that she was "elevator rides, passageways, and potentially in excess of ten football fields from the departure gate." (Mot.Summ.J. at 15.) The Defendant virtually ignores this point, but does point out that Plaintiff was injured in an area controlled by the Defendant. This fact is counterbalanced, however, by the other two factors.

■ Second, control. The more a passenger is acting at the direction of an airline in

boarding an airplane, the more the passenger may be said to be in the course of embarking. *See, e.g., Jefferies v. Trans World Airlines, Inc.,* No. 85–C–9899, 1987 WL 8168 at *4, 1987 U.S. Dist. LEXIS 2053 at *11 (finding that the plaintiff was in the course of embarking when she was "in the process of completing acts required of her by the defendant."); *see also Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501, 505 (N.D.Ill. 1988) (stating that the passengers' standing in line at the direction of the Defendant's employee was not necessarily within the Defendant's control). Here, the Plaintiff was acting entirely at her own direction. She was free to leave and re-enter the Lounge at any time and there was nothing in the Lounge that the airline considered a prerequisite to boarding. While the Defendant controlled whether or not a given passenger could enter the Lounge, that fact has no bearing on the Plaintiff's boarding her flight. Had she so desired, the Plaintiff need never have entered the Lounge. Even if the Defendant had directed her to stay in the Lounge, it is unlikely that Plaintiff could be said to be in the Defendant's control, since she had not been segregated from other passengers on other flights or airlines. *See Sweis,* 681 F.Supp. at 505.

■ Third, activity. The more a passenger's actions relate to the purpose of boarding, the more likely the passenger may be said to be in the course of embarking. *See, e.g., Jefferies v. Trans World Airlines, Inc.,* No. 85–C–9899, 1987 WL 8168 at *4, 1987 U.S. Dist. LEXIS 2053 at *11 (finding that the plaintiff was in the course of embarking when her actions "were solely related to the purpose of boarding.") Plaintiff was relaxing when she was injured. Her purpose was to get some reading material, not board any plane. While Defendant correctly points out that another of her purposes was that of waiting for her flight, it is the opinion of the Court that this notion of "activity" is too broad to assist in the current inquiry. Otherwise, any passenger waiting for a plane might be said to be in the course of embarking. As any air traveler is well aware, waiting for a plane and starting to get on it are two different things.

Extending this inquiry to other factors does not assist the Defendant. In *Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501 (N.D.Ill.1988), Judge Shadur read *Day* to include an "imminence" factor, that is, any inquiry into how soon the plane was to be boarded. Here, boarding was not imminent when the Plaintiff was injured. At best, Plaintiff was injured one and a half hours before her flight was to leave, and a half of an hour before the flight even was to be called for boarding. At worst, the flight was a full two hours from departure and a full hour from boarding. Under either view, boarding was not "imminent". *Compare Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. at 505 (stating that boarding was not "imminent" when departure was scheduled for two hours after the plaintiff's injury) *with Day,* 528 F.2d at 32–34 (indicating that when passengers were injured while in line at the gate of departure, boarding was imminent).

Plaintiff was injured in a Lounge maintained and operated by the Defendant, but used for passengers on multiple of the Defendants' flights and by passengers on other airlines. She was injured not less than one and one half hour before her flight was to leave and a half hour before it was to board. She was not doing anything at the Defendant's direction or for the purpose of boarding. And, she was on a level of the airport that differed from the gate level at the time she was injured. In these circumstances, the Court must conclude that she was not engaged in "any of the operations of embarking." A brief review of the case law supports this conclusion.

In an analogous case, *Buonocore v. Trans World Airlines, Inc.,* 900 F.2d 8 (2d Cir. 1990), the Second Circuit held that Article 17 did not govern an injury to a passenger who had only checked in at a ticket counter and was injured in a public area. There, as here, the plaintiff was unrestricted in his movement. The fact that Plaintiff here was injured in a location maintained by the Defendant is not dispositive. In *Sweis v. Trans World Airlines,* 681 F.Supp. at 505, the plaintiffs were under more control of the airline than was Plaintiff here, yet the Court held that the Convention did not apply. Oth-

er authorities also support this conclusion. *See Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256 (9th Cir.1977) (holding that Article 17 did not govern passenger injured in public area not under the "control" of the air line, despite fact that passenger was on way to connecting flight), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977); *Kantonides v. KLM Royal Dutch Airlines*, 802 F.Supp. 1203 (D.N.J.1992) (holding that passengers were not "in the course of the operations of embarking" when they were injured on a moving walkway when en route to connecting flight; passengers had not yet been segregated); *Rolnick v. El Al Israel Airlines, Ltd.*, 551 F.Supp. 261 (E.D.N.Y.1982) (holding that Article 17 did not govern passenger injured on elevator in public area while proceeding to his gate); *Upton v. Iran Nat'l Airlines, Corp.*, 450 F.Supp. 176 (S.D.N.Y.1978) (holding that Article 17 did not govern passenger injured under the collapse of a roof after being directed to wait in a public area by the defendant's personnel because the passengers were free to move about the airport), *aff'd, Upton v. Iran Nat'l Airlines Corp.*, 603 F.2d 215 (2d Cir.1979) (table).

The two cases most favoring Defendants, *Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir.1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) and *Jefferies v. Trans World Airlines, Inc.*, No. 85–C–9899, 1987 WL 8168, 1987 U.S.Dist. LEXIS 2053 (N.D.Ill. March 13, 1987), are distinguishable. In both cases, the Court found that Article 17 applied to a passenger's claim for damages. In *Day*, passengers were killed and injured when terrorists attacked them while they stood in line at a departure gate, waiting to be searched before entering their airplane. At the time of the attack, the passengers had surrendered their tickets, passed through passport control, and entered the areas reserved for departures on international flights, just like Plaintiff here. In addition, however, they were assembled at the departure gate "virtually ready to proceed to the aircraft" and they were required to stand in line at the airline's directions, and boarding was imminent. Plaintiff here was subject to none of these last conditions. Similarly, in *Jefferies*, the plaintiff was in-jured while completing acts required by the airline, was twelve feet from her departure gate room, and her actions were "solely related to the purpose of boarding." None of these conditions are similar to those of the plaintiff here.

For the foregoing reasons, the Court holds, as a matter of law, that Plaintiff was not "in the course of any of the operations of embarking" when she was injured.

**B. Applicability of the Warsaw Convention**

Having concluded that Article 17 does not apply to Plaintiff, the Court must return to the question of what constitutes "international transportation." Defendant's position is succinctly stated as follows: "Clearly, plaintiff's passenger ticket provided for 'international transportation' and, thus, all claims are exclusively governed by the Warsaw Convention." (Mem. of Def. British Airways in Opp'n to Pl.'s Mot. Partial Summ.J. and in Supp. of British Airways' Cross–Mot. for Partial Summ.J. at 16.) In support of this position, Defendant puts forth the following argument. The Warsaw Convention provides for a cause of action against air carriers in strict liability. This cause of action is a plaintiff's exclusive remedy against a carrier when the Warsaw Convention applies. The Warsaw Convention applies in this case because the Plaintiff has an airline ticket stating that it governs "international transportation." Therefore, Plaintiff's state or common law cause of action is pre-empted by any remedy she might have under the Warsaw Convention.

■ Given the Court's conclusion about the applicability of Article 17, Defendant's argument may be taken a few steps further, as follows. Having no remedy under Article 17, Plaintiff has no remedy under the Warsaw Convention. Because the Warsaw Convention pre-empts Plaintiff's state law remedy, Plaintiff has no remedy. Under this position, an air carrier's negligence against a passenger having a ticket on one of that carrier's international flights is entirely excused by the Warsaw Convention if the passenger is not "on board the aircraft or in the course of any of the operations of embarking or disembarking." In the opinion of the

Court, this conclusion demonstrates the absurdity of Defendant's position. One thing that the Warsaw Convention did not mean to do was to grant international air carriers absolute immunity from their negligence inside the terminal. There are at least two theoretical chinks in Defendant's armor. The first of these is that the Defendant's definition of "international transportation" cannot be as broad as they assert. Second, even if "international transportation" means what defendant says, and even if certain types of state law claims are pre-empted by the Warsaw Convention, there is no basis for holding that the instant claim is pre-empted. The Court now turns to these arguments.

### 1. "International Transportation"

■ As the Court has previously noted, the word "transportation" as it pertains to the Warsaw Convention, has been inartfully defined for the purposes of this case. Defendant apparently seeks to define the term "international transportation" so broadly so to apply to all *claims* of a passenger against an international carrier when the passenger has a ticket on that carrier's international flight. Defendant cites several cases for the proposition that the Warsaw Convention applies when (1) the passenger is travelling in "international transportation" as defined in article 1; and (2) that passenger's ticket contains certain provisions required by Convention article 3.[5] *See, e.g., Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501, 503 (N.D.Ill.1988); *see also Rabinowitz v. Scandinavian Airlines,* 741 F.Supp. 441, 443 (S.D.N.Y.1990) (stating that since the plaintiff's contract for transportation was international, the Convention applied). However, in

every one of the cases cited by the Defendant, there was no question that the passenger, or passengers, was involved in "transportation." At minimum, those individuals were on the airplane involved, or in the course of embarking or disembarking. Not one of those cases turned on the question of whether or not the plaintiff was involved in "transportation." Thus, those authorities do not support Defendant's position.

In fact, several of the authorities cited by Defendant tend to support the Plaintiff's position. Defendant is essentially arguing that when a passenger has an international ticket with a carrier, the passenger cannot sue the carrier under a common law claim. This position has either been entirely ignored or implicitly rejected by several courts. *See Rabinowitz v. Scandinavian Airlines,* 741 F.Supp. 441, 447 (S.D.N.Y.1990) (dismissing on jurisdictional grounds plaintiffs' state law claims for negligence after dismissing their Warsaw Convention claim); *Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501, 504 n. 11 (N.D.Ill.1988) (stating that the plaintiff's claim for negligence against a carrier was not affected by the court's conclusion that Article 17 did not apply); *see also Kantonides v. KLM Royal Dutch Airlines,* 802 F.Supp. 1203 (D.N.J.1992) (considering the plaintiff's state law claims on their merits after granting the carrier's motion for summary judgment on Warsaw Convention, despite the conclusion that the Defendant did not dispute that the passenger was in "international transportation"); *Rolnick v. El Al Israel Airlines, Ltd.,* 551 F.Supp. 261 (E.D.N.Y. 1982) (considering on the merits plaintiffs' negligence claim despite finding that they were without a remedy under the Warsaw

**5.** Article 3 states:
*Article 3*
(1) For the transportation of passengers the carrier must deliver a passenger ticket which shall contain the following particulars:
 (a) The place and date of issue;
 (b) The place of departure and of destination;
 (c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right, the alteration shall not have the effect of depriving the transportation of its international character;
 (d) The name and address of the carrier or carriers;

 (e) A statement that the transportation is subject to the rules relating to liability established by this convention.
(2) The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.
Warsaw Convention, Ch. II, art. 3.

Convention). None of the above cited cases considers the state law claims presented under a pre-emption analysis. Rather, each case seems to assume that if a plaintiff's claim is not governed by the Warsaw Convention, he is entitled to consideration on the merits of his state law claim, even if the plaintiff was, or was to be, a passenger on the defendant's airline and held a ticket providing for "international transportation." Only Judge Shadur expressly addresses the issue, however.

In *Sweis v. Trans World Airlines, Inc.*, 681 F.Supp. 501 (N.D.Ill.1988), the plaintiffs, members of the Sweis family, were injured during a terrorist attack inside the terminal building of Rome's Leonardo Da Vinci Airport. The Sweises sued their air carrier, Trans World Airlines, Inc. ("TWA") in a two count complaint. Count I alleged that TWA was negligent in having its check-in counter outside the airport's sterile area, thereby allowing the attack to occur. Count II alleged that TWA was strictly liable under the Warsaw Convention. In the *Sweis* opinion reported at 681 F.Supp. 501 (N.D.Ill.1988), Judge Shadur granted the Defendant's motion for summary judgment on the plaintiff's Warsaw Convention claim, holding that the plaintiffs were not "in the course of any of the operations of embarking" when they were injured. In so holding, Judge Shadur indicated that liability "under the Convention" was limited to that provided by Article 17, with two exceptions, one for contributory negligence, Article 21, and for a carrier's intentional misconduct, Article 25. *Sweis*, 681 F.Supp. at 503–04. In a footnote, Judge Shadur stated that the "under the Convention" qualification was important. *Id.* at 504 n. 11. He explained:

> This qualification is important. Any conclusion that TWA is not strictly liable under the Convention does not preclude recovery for its negligence—indeed it may pave the way for such an action to proceed. Many of Sweises' arguments supporting strict liability are claims that TWA was negligent in having its check-in counter outside the sterile area. That may be

relevant to Sweises' Count I claim (depending on the governing law), but it has no relevance to whether the Convention has made TWA strictly liable.

*Sweis*, 681 F.Supp. at 504 n. 11. Judge Shadur thus assumed that the plaintiffs were entitled to consideration of their negligence claim on the merits because that claim did not come "under the Convention", despite the fact that he previously concluded that the plaintiffs had tickets that would satisfy the requirements of Convention articles 1 and 3. *See Sweis*, 681 F.Supp. at 503. Unfortunately, Judge Shadur did not explain the theoretical basis for his conclusion that the *Sweis* plaintiffs' negligence claim did not fall within the Warsaw Convention. Nonetheless, the decision in the *Sweis* case governs this case.[6] Under *Sweis*, the Plaintiff's claim for negligence must be considered on its own merits.

In the opinion of the Court, one theoretical explanation for the conclusion explained in the *Sweis* footnote, is the argument that the plaintiffs there were not actually engaged in "transportation" under the Warsaw Convention. Under this view, the pre-emption issues raised and discussed, briefly, below have no bearing on the outcome of the case. The Convention just does not apply. While this position has not been considered or addressed by any court, at least one court has stated that one inquiry under the Warsaw Convention is "whether the plaintiff's claim arises out of an international air flight", thereby indicating that the proper inquiry for "transportation" is not limited to a consideration of the plaintiff's ticket. *See Walker v. Eastern Air Lines, Inc.*, 785 F.Supp. 1168, 1170 (S.D.N.Y.1992).

This still leaves the question of the proper interpretation of the word "transportation." While this issue will most likely be resolved by the Courts of Appeals, the Court notes that the word's interpretation might be limited to include conduct expressly considered elsewhere within the Convention; that is, with respect to injuries to passengers, "transportation" is governed by Article 17, meaning that a passenger is only in "international transportation" when "on board the

---

**6.** Interestingly, the Defendant cites *Sweis* as primary support for its argument that the Warsaw

Convention governs Plaintiff's negligence claim. Note 11 prohibits that conclusion, however.

aircraft or in the course of any of the operations of embarking or disembarking." Warsaw Convention, Ch. III, art. 17.[7] Although this conclusion was rejected in cursory fashion in *Bergsman v. El Al Israel Airlines,* 10 Av.Cas. (CCH) ¶ 17,346 (N.Y.Sup.Ct. July 12, 1967),[8] the Court is unaware of any alternative interpretation. In the opinion of the Court, the *Bergsman* opinion is unreliable and not persuasive. At minimum, however, the Court concludes that the Plaintiff in this case was not yet in "international transportation" when she was injured.[9] Therefore, the Warsaw Convention does not apply and Plaintiff may proceed with her common law negligence claim.

## 2. Pre-emption

Assuming, *arguendo,* that "international transportation" under Warsaw Convention article 1 had the broad meaning attributed to it by the Defendant, the Court is of the opinion that Plaintiff's state law claim is not pre-empted by the Warsaw Convention.

The majority of federal courts once adhered to the view that the Warsaw Convention did not create a cause of action. *See Dunn v. Trans World Airlines, Inc.,* 589 F.2d 408, 411 (9th Cir.1979). Rather, it created a presumption of liability to be proven by otherwise applicable substantive law. This view, however, has given way to the view that the Warsaw Convention creates a cause of action that is the exclusive remedy when the terms of the convention are satisfied. *See In re Korean Air Lines Disaster of Sept. 1, 1993,* 932 F.2d 1475, 1490–94

(D.C.Cir.1991) (Mikva, J., dissenting) (discussing the exclusivity of the Warsaw Convention remedy provided in Article 17), *cert. denied,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 438 *and cert. denied,* 112 S.Ct. 616 (1991); *Schroeder v. Lufthansa German Airlines,* 875 F.2d at 620 n. 5; *Abramson v. Japan Airlines Co.,* 739 F.2d 130, 134 (3d Cir.1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985); *see also Benjamins v. British European Airways,* 572 F.2d 913, 919 (2d Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979) (indicating that the Warsaw Convention creates a cause of action enabling a plaintiff to sue under its terms).

Despite the increasing agreement that the Warsaw Convention is a plaintiff's exclusive remedy when it applies, there is divergence over the question of whether a plaintiff's failure to satisfy the terms of Article 17 also precludes that plaintiff's recovery under a state law claim. Typically, this issue arises when a plaintiff is injured during the course of an international flight but the plaintiff's injury did not result from an "accident". In such circumstances, Article 17 does not apply. The question then presented is whether the plaintiff can sue for his or her injuries under the common law. Some Courts have held that such circumstances permit a state law action. *See Abramson v. Japan Airlines Co.,* 739 F.2d 130, 134 (3d Cir.1984) (stating that Article 17 was intended to limit, not eliminate carrier liability), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835

---

**7.** Similarly, "international transportation" with respect to baggage would be governed by articles 18 and 19, to the extent those articles can be said to add anything to the term.

**8.** The entire opinion in the *Bergsman* case is stated as follows:

> Contrary to plaintiff's contention, there is no provision in the relevant articles of the Warsaw Convention which limits the applicability thereof only to such times as a passenger is boarding or debarking from an aircraft, or is in actual flight, as claimed by plaintiff here. Accordingly, the motion to strike the affirmative defense is denied.

*Bergsman v. El Al Israel Airlines,* 10 Av.Cas. (CCH) ¶ 17,346 (N.Y.Sup.Ct. July 12, 1967). As this opinion is made without any indication of

the facts involved, it can be of little persuasive authority.

**9.** This conclusion is not contradicted by any of the case law cited herein. However, the Court does note that the Defendant in *Kantonides v. KLM Royal Dutch Airlines,* 802 F.Supp. 1203, 1209 (D.N.J.1992) "conceded" that the plaintiff was a passenger in "international transportation" under article 1, even though the passenger was later found not to have been on the airplane, or in the course of embarking or disembarking, and even though the court therein addressed the plaintiff's state law claim on the merits. For a case where a court held that the Warsaw Convention did not apply, even though the plaintiff was still a "passenger" on the defendant airline, see *MacDonald v. Air Canada,* 439 F.2d 1402 (1st Cir.1971).

(1985); *see also In re Air Disaster at Lockerbie,* 928 F.2d 1267, 1273 (2d Cir.) (favorably citing *Abramson* ), *cert. denied,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); *Walker v. Eastern Air Lines, Inc.,* 785 F.Supp. 1168, 1172–73 (S.D.N.Y.1992) (relying on *Abramson* and *Lockerbie* ); *Fischer v. Northwest Airlines,* 623 F.Supp. 1064 (N.D.Ill.1985) (permitting state law cause of action for negligence, following *Abramson,* despite finding that Warsaw Convention did not apply). In contrast, the Defendant has taken the position that the Warsaw Convention entirely pre-empts all causes of action for passenger injury or death on international flights. *See Jack v. Trans World Airlines, Inc.,* 820 F.Supp. 1218 (N.D.Cal.1993). Despite this apparent issue, the Supreme Court has twice declined to rule on the scope of any Warsaw Convention pre-emption of state law cause of action when the Convention is not satisfied. *See Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 533–34 n. 2, 111 S.Ct. 1489, 1492 n. 2, 113 L.Ed.2d 569 (1991) (noting that although the district court dismissed plaintiffs' claims under the Warsaw Convention and under state law tort and contract theories, it addressed only the Warsaw Convention claim); *Air France v. Saks,* 470 U.S. 392, 408, 105 S.Ct. 1338, 1346–47, 84 L.Ed.2d 289 (1985) (indicating that the plaintiff sought recovery on a state negligence action, independent of her failed Warsaw Convention claim, but declining to address the issue).

In the opinion of the Court, the *Abramson* decision would govern this case if the Warsaw Convention were said to apply. While valid arguments may be made for the entire pre-emption of state law claims, when the Convention applies, even if the Convention is not satisfied, as in *Eastern Airlines, Inc. v. Floyd* and *Air France v. Saks,* the Court is of the opinion that such a result should not apply to the facts of this case, given the Convention's legislative history.

In crafting the provision that is now Article 17, the delegates to the first of two conferences, the Paris conference, considered a draft that extended accident coverage to international passengers:

from the time when [they] enter the airport of departure until the time when they exit from the airport of arrival.

*Day v. Trans World Airlines, Inc.,* 528 F.2d 31, 35 (2d Cir.1975) (quoting the Warsaw Minutes at 171), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). Another proposal indicated that liability was to attach only when passengers were actually inside the aircraft. *Id.* Both proposals were rejected in favor of the current draft which allows consideration of the facts and circumstances in each case. *Id.* There is no evidence that by rejecting the draft allowing for Warsaw Convention liability at the time of entry into the airport in favor of the current draft of Article 17 that the delegates intended to grant carriers absolute immunity for their negligence against their own international passengers prior to or after the conditions set out in Article 17. It is one thing to refuse to subject a carrier to strict liability, it is another to grant them absolute immunity against certain passengers in certain circumstances.

■ Whether or not the Warsaw Convention pre-empts state law claims for injuries incurred while a passenger is already on an international aircraft or is "in the course of any of the operations of embarking or disembarking", it is the opinion of the Court that different considerations arise when a passenger is not on an aircraft and is not "in the course of any of the operations of embarking or disembarking." If, in those circumstances, the Warsaw Convention is somehow said to apply, it is the Court's opinion that the Convention does not pre-empt a state law cause of action for negligence. Otherwise, the plaintiff would have no remedy, not being able to satisfy the Convention but being pre-empted by it from suing under state law. Putting aside any constitutional concerns regarding any entitlement to a remedy, the Court is of the opinion that the delegates to the Warsaw Convention did not intend to deprive plaintiffs like Ms. Beaudet of their state law causes of action for negligence incurred prior to engaging "in the course of

any of the operations of embarking or disembarking." [10]

Accordingly, with respect to the pre-emption issue here presented, Plaintiff's Motion for Partial Summary Judgment is granted; the Defendant's Motion is denied.

See also 853 F.Supp. 268.

### III. CONCLUSION

The Court holds that the Warsaw Convention does not apply to this case because the Plaintiff was not "in the course of any of the operations of embarking or disembarking" and was not in "international transportation". Alternatively, the Court holds that Plaintiff's state law cause of action is not pre-empted by the Warsaw Convention. Accordingly, the Plaintiff's Motion for Partial Summary Judgment is granted; the Defendant's motion is denied.

---

**10.** Judge Shadur states a policy basis for Court's conclusions both as to applicability of Article 17 and as to pre-emption in *Sweis v. Trans World Airlines, Inc.,* 681 F.Supp. 501 (N.D.Ill.1988). He writes:

> And there is another practical reason supporting the conclusion that Article 17 should not apply. When the Convention governs, its pro-visions supplant local law. There may be substantial variance between the agreed international rule and the local rule. It makes sense that there ought to be a point at which the Convention's provisions attach at the beginning of the trip, and another where they end once the trip is over.

*Sweis,* 681 F.Supp. at 505.