**Surjumony RAJCOOAR, Individually and as Administratrix of the Estate of Rajcooar, a/k/a Johnny Rajcooar, Plaintiff,**

v.

**AIR INDIA LIMITED and Heathrow Airport Limited, Defendants.**

**No. 98CV1421(ARR).**

United States District Court, E.D. New York.

March 13, 2000.

Sanford Solny, Issacson, Schiowitz Korson & Solny, New York City, for plaintiff.

Michael Holland, Condon & Forsyth, LLP, New York City, for defendant.

### OPINION AND ORDER

ROSS, District Judge.

By complaint filed February 25, 1998, plaintiff Surjumony Rajcooar initiated this action against defendants Air India Limited ("Air India") and Heathrow Airport Limited ("Heathrow") seeking damages on behalf of herself and her late husband for Mr. Rajcooar's death. By an order and opinion dated April 23, 1999, this court dismissed Heathrow for want of personal jurisdiction. Air India now moves for summary judgment, contending that it can only be held liable to Ms. Rajcooar under the Warsaw Convention,[1] and that under the terms of that treaty, a factual prerequisite to liability is missing. Ms. Rajcooar argues that the Warsaw Convention does

---

**1.** The official name of the Warsaw Convention is the "Convention for the Unification of Certain Rules Relating to International Transportation by Air." It can be found at 49 Stat. 3000 (1934).

not apply under the circumstances of this case. For the reasons explained below, the court agrees that the Warsaw Convention applies and, consequently, grants summary judgment to Air India.

## BACKGROUND

The Rajcooars boarded Air India flight 112 at New York's John F. Kennedy Airport on February 25, 1996 bound for New Delhi via London Heathrow Airport. They arrived at Heathrow around 9:00 a.m. the following morning and were required to deplane with their hand baggage for a layover. During that layover, the Rajcooars and the other passengers continuing to India, known as transit passengers, were required to remain in the area of Terminal 3 called the transit lounge. The transit lounge is a large area, utilized by several airlines and restricted to passengers who have cleared customs and security checks, either at Heathrow or at their airport of origin. Transit passengers hold plastic transit cards that enable them to re-board the plane. They are not required to check-in again at the gate, but merely need to present the transit card when the flight is called.

At some point shortly before flight 112 was to depart Heathrow, Mr. Rajcooar suffered a heart attack and collapsed. Assistance was sought from Air India personnel and paramedics were called, but Mr. Rajcooar died as a result of the heart attack. Ms. Rajcooar's complaint alleges that Air India employees failed to provide the necessary medical help in time, and that Mr. Rajcooar's death was a result of that failure. In her complaint, Ms. Rajcooar asserted that when Mr. Rajcooar collapsed, he was on line to board the plane at Gate 26. In a later affidavit, however, Ms. Rajcooar stated that her husband was in the corridor near Gate 26, but was not on line. Farok Kapadia, the Flight Handling Manager for Air India who was at Gate 26 when Mr. Rajcooar collapsed, confirmed that Mr. Rajcooar was in the corridor outside Gate 26, but stated that the line extended into the corridor and that Mr. Rajcooar was on that line.

## DISCUSSION

The Warsaw Convention makes airlines liable up to $75,000 for injuries arising out of accidents on board airplanes or during the process of embarking or disembarking. *See* Warsaw Convention, Art. 17. The remedy provided by the Warsaw Convention is the exclusive remedy available from airlines for such injuries. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155, 161, 119 S.Ct. 662, 668, 142 L.Ed.2d 576 (1999). Whether an injured passenger was in the process of embarking, and thus compensable under the Warsaw Convention, is analyzed under a test developed in *Day v. Trans World Airlines, Inc.,* 528 F.2d 31 (2d Cir.1975). Under the test adopted in *Day,* there are four factors that a court is to consider: 1) the activity in which the passenger was engaged when the accident occurred; 2) the degree of control the airline exercised over the passenger's actions; 3) the imminence of boarding; and 4) the location in which the accident occurred. *See id.* at 33.

In *Day* itself, the plaintiffs were passengers who had been injured and representatives of passengers who had been killed in a terrorist attack in the Athens airport. The Second Circuit noted that the passengers had already passed through passport control into an area open exclusively to those departing on international flights and were assembled at the gate. *See id.* The airline had instructed the passengers to form a queue to undergo a final weapons search, a prerequisite to boarding. *See id.* Because they were engaged in an activity required for boarding, at the direction of the airline and at the departure gate with boarding imminent, the court concluded that the Warsaw Convention applied. *See id.* at 33–34. By contrast, the decedent in *Buonocore v. Trans World Airlines, Inc.,* 900 F.2d 8 (2d Cir.1990), was killed by terrorists while in an area of the airport open to the public while walk-

ing to a snack cart and free to roam or even leave the airport, two hours before his flight. *See id.* at 10. The Second Circuit found that the Warsaw Convention did not apply in *Buonocore. See id.* at 11.

■ The facts in this case fall somewhere between those of *Day* and *Buonocore.* Considering the first factor, the passenger's activities, the court assumes for the purposes of this motion that Mr. Rajcooar was proceeding to the departure gate when he suffered his heart attack.[2] Like the plaintiffs in *Day,* he had already completed virtually all of the steps required to board the flight, needing only to surrender his transit pass and walk up the jetway. The control factor is not as strong as it was in *Day,* as Mr. Rajcooar was not operating under specific instructions of the airline. As in *Jefferies v. Trans World Airlines, Inc.,* 1987 WL 8168 at *4 (N.D.Ill.1987), however, Mr. Rajcooar was preparing to perform acts implicitly required of him by the airline. When his heart attack struck, Mr. Rajcooar was reporting to the departure gate as Air India told him to do. Although he was not acting under the explicit control of the defendant, he risked missing his plane if he strayed far from the gate.

Moreover, the other two factors, on balance, also point towards application of the Warsaw Convention. Even if Mr. Rajcooar was not yet on line, the evidence introduced with this motion suggests that departure was imminent. Mr. Kapadia stated that a boarding call had been made and that passengers had already begun to queue. *See* Kapadia Aff. ¶ 14. There is no genuine issue as to this fact. Ms. Rajcooar stated of the timing of her husband's heart attack: "I believe it was prior to the time that any passengers had yet begun to check in at gate 26 for the flight to India." Rajcooar Aff. at 2 (unnumbered). This qualified, conclusory statement is insufficient to create a genuine issue of fact. In addition, the incident occurred immediately outside the gate from which Mr. Rajcooar's flight was departing. Although the location was not controlled exclusively by the airline, as in *Alleyn v. Port Authority of New York,* 58 F.Supp.2d 15, 17 (E.D.N.Y.1999) (finding the Warsaw Convention to apply), it was a part of the airport accessible only to passengers on international flights, as in *Day,* 528 F.2d at 33.

The determination of the applicability of the Warsaw Convention is fact-specific, to be undertaken on a case-by-case basis. *See Alleyn,* 58 F.Supp.2d at 20. A review of other cases convinces the court that these facts warrant application of the Warsaw Convention. The most similar case is *Jefferies.* In that case, the plaintiff slipped while joining a line approximately twelve feet from the departure gate at, coincidentally, Heathrow Airport. *See Jefferies,* 1987 WL 8168 at *4. Like Mr. Rajcooar, she was in a restricted location and was "not free to leave the terminal or wander its environs without the risk of losing her flight." *Id.* "Her activity at the time of the accident was solely related to the departing flight." *Id.* The court in *Jefferies* thus concluded that she was in the process of embarking, notwithstanding the fact that she was not acting under the explicit direction of the airline and was outside the gate area. *See id.* at *5. By contrast, plaintiffs in cases in which the Warsaw Convention has not been applied

---

**2.** Air India encourages the court to disregard Ms. Rajcooar's affidavit testimony that her husband was not on line because it conflicts with the complaint. Although a "party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding[,]" *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.,* 757 F.2d 523, 528 (2d Cir.1985), Ms. Rajcooar could, with leave of the court,

amend her complaint to conform to her affidavit. Since the complaint, unlike the affidavit, was not sworn by Ms. Rajcooar, the court would be likely to allow an amendment of the complaint. Nevertheless, as discussed in the text, the court finds that the Warsaw Convention applies even if Ms. Rajcooar's statement that her husband was not on line is taken as true.

were significantly removed from the boarding process. *See Buonocore,* 900 F.2d at 10; *Schmidkunz v. Scandinavian Airlines System,* 628 F.2d 1205, 1207 (9th Cir.1980) (plaintiff was at least 500 yards from the gate, had not yet received a boarding pass, was not imminently preparing to board the plane, and was not under the direction of airline personnel); *Rolnick v. El Al Israel Airlines, Ltd.,* 551 F.Supp. 261, 262–63 (E.D.N.Y.1982) (plaintiffs fell on an escalator in publicly accessible part of airport before obtaining boarding passes or clearing passport control); *Upton v. Iran National Airlines Corp.,* 450 F.Supp. 176, 178 (S.D.N.Y.1978) (roof collapsed on plaintiff while awaiting delayed flight in public waiting area prior to proceeding through customs, passport control, or security check). Mr. Rajcooar was only one step removed from stepping onto the plane and was approaching the gate in order to complete that last step. The flight was departing shortly and he was not free to engage in any pursuits of his own choosing except at risk of missing his plane. He was located in the transit lounge, a restricted area, and was near gate 26 because Air India required him to be there. Under these circumstances, even if Mr. Rajcooar was not yet on the line forming to re-board the Air India flight, the Warsaw Convention governs.

▮ Having concluded that the Warsaw Convention applies, summary judgment for the defendant is appropriate because Mr. Rajcooar's death was not the result of an "accident" under Article 17. The Supreme Court has defined an "accident" as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks,* 470 U.S. 392, 405, 105 S.Ct. 1338, 1345, 84 L.Ed.2d 289 (1985). A heart attack does not meet that definition, as it is not external to the passenger. *See Tandon v. United Air Lines,* 926 F.Supp. 366 (S.D.N.Y.1996); *Fischer v. Northwest Airlines,* 623 F.Supp. 1064 (N.D.Ill.1985). Nor does allegedly inadequate medical care without some

showing of unexpected circumstances. *See Krys v. Lufthansa German Airlines,* 119 F.3d 1515, 1520 (11th Cir.1997) ("In the absence of proof of abnormal external factors, aggravation of a pre-existing injury during the course of a routine and normal flight should not be considered an 'accident' within the meaning of Article 17."). Ms. Rajcooar has not argued in this motion that she is entitled to recovery under the Warsaw Convention and the court concludes that she is not.

### CONCLUSION

For the reasons explained herein, summary judgment is granted in favor of the defendant and the plaintiff's complaint is dismissed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.