No. 1--95--4330

GUSTAV KOEHLER, IDA KOEHLER ) Appeal from the 
and REIMUND KOEHLER, ) Circuit Court of
 ) Cook County.
 Plaintiffs-Appellants, )
 )
 v. ) 
 )
SCANDINAVIAN AIRLINES SYSTEMS, ) Honorable 
 ) Kathy Flanagan,
 Defendant-Appellee. ) Judge Presiding. 

 JUSTICE BURKE delivered the opinion of the court:
 Plaintiffs Gustav Koehler, Ida Koehler, and Reimund Koehler
(the Koehlers) appeal from an order of the circuit court granting
defendant Scandinavian Airlines Systems (SAS) summary judgment
pursuant to section 2--1005(b) of the Illinois Code of Civil
Procedure (735 ILCS 5/2--1005(b) (West 1992)). On appeal, the
Koehlers contend that the trial court erred in granting SAS summary
judgment based on its determination that it lacked subject matter
jurisdiction pursuant to the Warsaw Convention (Convention) and,
"assuming arguendo" that they were engaged in "international
transportation" as defined by the Convention, their common law
State causes of action were not preempted by the Convention. For
the reasons set forth below, we reverse.
 SAS is a consortium formed by Aero-transport AB, Sweden (ABA),
Det Danske Luftfartselskab, A/S, Denmark (DDL), and Det Norske
Luftfartselskab A/S, Norway (DNL). The consortium owns SAS
according to the following division: ABA 3/7, DDL 2/7, and DNL
2/7. ABA is incorporated and has its principal place of business
in Sweden, DDL is incorporated and has its principal place of
business in Denmark, and DNL is incorporated and has its principal
place of business in Norway. SAS admits that it does business in
Illinois. 
 On or about January 15, 1994, the Koehlers bought tickets to
travel from Germany to Chicago and back to Germany. They purchased
their tickets in Augsburg, Germany, through a travel agent, Asta
Reisen, who ticketed them to fly on defendant SAS. According to
the Koehlers, they obtained SAS's consent to have their dog "Terry"
accompany them in the cabin of the plane in lieu of one piece of
carry-on luggage.
 On the return trip from Chicago to Germany, the Koehlers
stopped in Copenhagen, Denmark to make a connecting flight. They
had traveled from Germany to Chicago and Chicago to Copenhagen
transporting Terry in the cabin of the plane. After arriving in
Copenhagen, the Koehlers went to check in for their flight to
Germany. They walked for 10 or 15 minutes to a SAS ticket counter
which was located in a common area of the terminal. Upon checking
in, they were told that they would have to pay extra to take the
dog with them on their flight to Germany. When they refused to pay
the additional amount, SAS directed the Danish police to arrest
them, and they were denied access to telephones and the airport. 
(The record does not indicate how long or where they were
detained.) The Koehlers subsequently left the airport, rented a
car and returned to Germany.
 On June 19, 1995, the Koehlers filed a complaint against SAS
alleging false arrest and imprisonment, defamation, intentional
infliction of emotional distress, and breach of contract. In its
answer, SAS asserted eight affirmative defenses: (1) failure to
state a cause of action upon which relief could be granted; (2)
lack of subject matter jurisdiction pursuant to Article 28 of the
Convention; (3) contributory negligence of the Koehlers pursuant to
Article 21 of the Convention; (4) lack of liability or limitation
of liability "pursuant to its [SAS's] Tariffs on file with the
Department of Transportation of the United States and pursuant to
its Conditions of Carriage as set forth in the relevant contract of
transportation"; (5) lack of proximate cause or culpable conduct on
the part of SAS; (6) complete performance of all the terms and
conditions of the contract between the Koehlers and SAS; (7)
dismissal pursuant to the Act of State Doctrine; and (8) dismissal
pursuant to the doctrine of forum non conveniens.
 On July 31, 1995, SAS filed a motion for summary judgment
based on lack of subject matter jurisdiction pursuant to Articles
1(2) and 28 of the Convention. Article 1(2) defines "international
transportation" as follows:
 "For the purposes of this convention the
 expression 'international transportation'
 shall mean any transportation in which,
 according to the contract made by the parties,
 the place of departure and the place of
 destination, whether or not there be a break
 in the transportation or a transshipment, are
 situated either within the territories of two
 High Contracting Parties, or within the
 territory of a single High Contracting Party,
 if there is an agreed stopping place within a
 territory subject to the sovereignty,
 suzerainty, mandate or authority of another
 power, even though that power is not a party
 to this convention. (Emphasis added.) 49
 U.S.C.A. 1502 (note) (1988).
 According to SAS, because the Koehlers were involved in
"international transportation," as defined in Article 1, the
"Warsaw Convention applied to plaintiffs' claims and the court
lacked subject matter jurisdiction over the action because
plaintiffs had failed to bring the action in a proper forum under
Article 28 of the Convention," which "restricts the forums in which
damages actions may be brought" to four possible fora: the
carrier's domicile; the carrier's principal place of business;
where the contract was formed; or the place of final destination. 
SAS further maintained that none of these enumerated fora were
located in the United States based on the following: (1) the
domicile of the carrier within the meaning of the Convention is the
carrier's place of incorporation, and SAS is domiciled in either
Sweden, Denmark, or Norway, or all three; (2) the principal place
of business of the carrier excludes the United States because SAS's
corporate headquarters are located in Sweden; (3) the relevant
contract of transportation in the transportation of passengers is
the passenger ticket, and the contract between the Koehlers and SAS
was made in Germany; and (4) the place of destination for purposes
of Article 28 is the ultimate destination of transportation as
indicated on the passenger ticket, and the Koehlers' final
destination was Germany. SAS therefore argued that the United
States is not the proper forum for the Koehlers' action against
SAS, and their complaint should be dismissed.
 In response to SAS's motion, the Koehlers contended that SAS
missed a step in its analysis of the application of the Convention,
arguing that Article 1 of the Convention only defines
"international," and in order to define "transportation," the court
must look to Article 17, which provides:
 "The carrier shall be liable for damage
 sustained in the event of the death or
 wounding of a passenger or any other bodily
 injury suffered by a passenger, if the
 accident which caused the damage so sustained
 took place on board the aircraft or in the
 course of any of the operations of embarking
 or disembarking." Note following 49 U.S.C.A.
 1502 (1988).
 Based upon this provision, the Koehlers argued that because they 
were not on board the aircraft or in the course of embarking or
disembarking, the Convention did not apply and thus did not
preclude the trial court's jurisdiction.
 In reply, SAS claimed that the Koehlers misconstrued the
proper application of Article 17, which provides a plaintiff with
a cause of action arising from personal injuries or death, in
determining whether the Convention applies. SAS maintained that a
court must first determine whether the Convention applies under
Article 1 and then determine whether the court has proper subject
matter jurisdiction under Article 28 before reviewing the
requirements and restrictions of Article 17.
 SAS further argued that notwithstanding some courts have found
that even if the Convention applies, a plaintiff's state law claims
would not be preempted thereunder, there is a split in the federal
circuits regarding this approach. Accordingly, SAS argued that if
the trial court found the Convention applied to the Koehlers'
complaint and it did not preempt their State law claims, the trial
court would still have to dismiss the complaint due to lack of
subject matter jurisdiction pursuant to article 28 of the Convention.
 On November 17, 1995, the trial court held that the 
Convention applied to the Koehlers' complaint, and granted SAS's
motion for summary judgment because, pursuant to Article 28, the
court lacked subject matter jurisdiction. This appeal followed.
 On appeal, the Koehlers contend that the trial court erred in
granting SAS's motion for summary judgment based on lack of subject
matter jurisdiction, arguing the Convention should never have been
applied to the instant case because the Koehlers were not involved
in "international transportation" as defined in Article 1 of the
Convention. They further argue that a court must look to both
Articles 1 and 17 of the Convention to determine what activity
constitutes "international transportation." According to the
Koehlers, they were not in the course of any of the operations of
embarking or disembarking and thus were not engaged in
"international transportation." More specifically, they were
nowhere near the gate, were not under the control of SAS, and were
merely checking in at the time their injury occurred. Accordingly,
the Koehlers argue, they were not engaged in "transportation" at
the time of the injury, and thus the Convention and its
jurisdictional limitations do not apply to their claims.
 SAS argues, as it did in the trial court, that a court must
first look to Article 1 of the Convention and its definition of
"international transportation" to determine if the Convention
applies. If the Convention does apply, the court must then look to
Article 28's jurisdictional requirements to determine if the
plaintiff has filed in the proper forum and, if so, only then can
it look to Article 17, which provides a plaintiff with a cause of
action for damages if the plaintiff was on board the aircraft or
embarking or disembarking at the time of the accident. SAS asserts
that any other interpretation in determining whether the convention
applies is contrary to the plain meaning of the Convention.
 The standard of review for summary judgment is de novo. Urban
v. Village of Lincolnshire, 272 Ill. App. 3d 1087, 1094, 651 N.E.2d
683 (1995). A reviewing court must determine whether the trial
court correctly ruled that no genuine issue of material fact
existed, and that judgment was correctly entered for the moving
party as a matter of law. Urban, 272 Ill. App. 3d at 1094. The
reviewing court must view the evidence in a light most favorable to
the nonmoving party. Turner v. Roesner, 193 Ill. App. 3d 482, 549
N.E.2d 1287, cert. denied, 140 Ill. 2d 555 (1990).
 "The scope of the Warsaw Convention is a matter of federal law
and federal treaty interpretation, and must be determined from an
examination of the 'four corners of the treaty.'" Maugnie v.
Compangie Nationale Air France, 549 F.2d 1256, 1258 (1977). Treaty
interpretation necessarily requires an evaluation of legislative
history and the intent of all parties involved in the contract. 
Maugnie, 549 F.2d at 1258; Wolgel v. Mexicana Airlines, 821 F.2d
442, 444 (1987). 
 A reading of the legislative history of the Convention reveals
its purpose is to protect airlines from huge damage claims due to
mass air disasters, and to establish a system of uniformity
regarding claims and the applicable substantive law. In re Air
Disaster at Lockerbie, Scotland v. Pan American World Airways,
Inc., 928 F.2d 1267, 1270 (1991), citing Lowenfeld & Mendelson, The
United States and the Warsaw Convention, 80 Harv. L. Rev. 497, 498-
99 (1967). Section 22 of the Convention limits the liability of
the airlines in order to allow them to establish insurance rates
and to lessen potential litigation against the airlines. In re Air
Disaster at Lockerbie, Scotland, 928 F.2d at 1271.
 Initially, the Convention limited a plaintiff's recovery to
approximately $8,000, however, in 1966, the Montreal Agreement
modified this amount. CAB Agreement 18900, reprinted in 49
U.C.S.A. 1502 (note) (1988). The Montreal Agreement adopted a
trade-off: Air carriers would be strictly liable, thus eliminating
the requirement of proving fault, in exchange for a damage cap of
$75,000. Beaudet v. British Airways, PLC, 853 F. Supp. 1062, 1065
(1994). Articles 1 and 17 of the Convention indicate that it
applies to all international air flights and creates liability in
the event of death or bodily injury sustained while on board the
aircraft, or in the course of the operations of embarking or
disembarking.
 SAS seeks to have this court rule that whenever a passenger
holds a ticket for international travel between signatory
countries, any claim against the airline must be controlled by the
provisions of the Convention. We cannot agree, however, with this
proposition. To do so would mean that once a passenger purchases
a ticket for international transportation, the Convention and its
jurisdictional requirements apply to any negligent actions of the
airline. Such a conclusion would render airlines immune from their
negligent acts occurring within the terminal when the passenger is
not involved in an "accident," not on board the airplane, or not in
the course of the operations of embarking of disembarking. This is
clearly not the intent of the drafters of the Convention. Indeed,
Illinois federal courts have recognized this as an untenable
"position." Specifically, in Beaudet, 853 F. Supp. at 1070, the
court stated:
 "Under this position, an air carrier's
 negligence against a passenger having a ticket
 on one of that carrier's international flights
 is entirely excused by the Warsaw Convention
 if the passenger is not 'on board the aircraft
 or in the course of any of the operations of
 embarking or disembarking.' In the opinion of
 the Court, this conclusion demonstrates the
 absurdity of Defendant's position. One thing
 that the Warsaw Convention did not mean to do
 was to grant international air carriers
 absolute immunity from their negligence inside
 the terminal."
 We agree with plaintiffs here that the Convention does not
create an exclusive cause of action for any injury incurred by a
passenger holding a ticket for international travel. See Abramson
v. Japan Airlines Co., Ltd., 739 F.2d 130, 134 (1984) ("[T]he
Warsaw Convention's limitation and theory of liability is exclusive
when it applies *** but it does not preclude alternative theories
of recovery"); Tandon v. United Air Lines, 926 F. Supp. 366, 370
(1996) ("Courts addressing the issue have held that, although the
Warsaw Convention preempts state law claims falling within its
scope, it does not preempt claims that are not covered by it
provisions"); In re Air Disaster at Lockerbie, Scotland, 928 F.2d
at 1273 ("[The issue is not] whether a plaintiff may bring a state
cause of action when the claim does not arise under the Warsaw
Convention, which a plaintiff plainly may institute"); Walker v.
Eastern Air Lines, Inc., 785 F. Supp. 1168, 1170 (1992) ("[N]othing
in the text of the Warsaw Convention precludes the plaintiff from
instituting an action against the air carrier to recover for ***
death or bodily injury under state law"). Clearly, the drafters of
the Convention "intended to ensure uniformity in air carriers'
liability for death or bodily injury in the event of accidents,
rather than uniformity in air carriers' liability for death or
bodily injury generally." Walker, 785 F. Supp. at 1171.
 This analysis is consistent with the intent of the drafters of
the Convention, who clearly did not intend for the Convention to
preclude all claims not described within the text of the treaty. 
In discussing whether Article 19 of the Convention, which pertains
to "damages occasioned by delay in the transportation by air of
passengers, baggage, or goods," would bar a claim for total
nonperformance of a contract between a ticket holder and the
airline, Mr. Ambrosini, the delegate from Italy, noted that Article
[19] did not provide a remedy for nonperformance. Wolgel, 821 F.2d
at 444. Mr. Ambrosini suggested that the treaty be amended to
include a provision for total nonperformance; however, the drafters
determined that there "was no need for a remedy in the Convention
for total nonperformance of the contract, because in such a case
the injured party has a remedy under the law of his or her home
country." Wolgel, 821 F.2d at 444. Similarly, in the present
case, no provision exists covering the Koehlers' noncontractual
claims against SAS. As in the case of nonperformance of the
contract, the Koehlers' noncontractual claims may be remedied under
the law of their home country if they can establish jurisdiction.
 We briefly observe that SAS's reliance on Duff v. Varig
Airlines, Inc., 185 Ill. App. 3d 992, 542 N.E.2d 69 (1989), in
support of their argument that courts must determine the
application of the Convention by looking to Article 1 for the
definition of "international transportation" and then apply the
jurisdictional limitations enumerated in Article 28 before
evaluating the liability provision in Article 17, is misplaced. 
Duff is not inconsistent with our decision in the present case. In
Duff, the defendant airline incorrectly advised the plaintiff, who
was traveling from Brazil to South Africa, of his departure time. 
As a result, the plaintiff missed his flight, and incurred expenses
of $2,500. The Duff court held:
 "If the passenger's ticket provides for
 international transportation as defined above
 [Article 1], 'this is sufficient to invoke the
 Warsaw Convention.' Accordingly, '[w]hen the
 contract of the parties provide for
 transportation between certain designated
 termini, the provisions of the Convention
 automatically apply and exclusively govern the
 rights and liabilities of the parties.'"
 The Duff court reasoned that because the Warsaw Convention applied
under Article 1, the plaintiff was required to meet the
jurisdictional restrictions enumerated in the Convention. Because
the plaintiff had not brought the suit in one of the four fora
listed in the Convention, the court dismissed the case for lack of
subject matter jurisdiction.
 Duff is distinguishable from the case at bar, however. The
issue in Duff was whether the Convention applied to the defendant
airline's breach of its contractual duties. Clearly, under Article
1, a contract claim based on the ticket which provided for
international transportation falls within the scope of the
Convention. Here, although one of the Koehlers' claims is a
contract claim which is subject to the Convention, their claims for
false arrest and imprisonment, defamation, and intentional
infliction of emotional distress clearly do not fall within the
scope of the types of injuries the Convention was intended to
cover.
 For the reasons stated, therefore, we affirm the circuit
court's grant of summary judgment on plaintiffs' breach of contract
claim, but reverse the grant of summary judgment as to plaintiffs'
claims alleging false arrest and imprisonment, defamation, and
intentional infliction of emotional distress, and remand the cause
to the circuit court for consideration of these claims, provided
that plaintiffs can establish jurisdiction under the laws of this
State.
 Affirmed in part and reversed in part; cause remanded.
 HARTMAN, P.J., and SCARIANO, J., concur.